IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 22, 2001 Session

## STATE OF TENNESSEE v. RHONDA GRILLS

**Direct Appeal from the Circuit Court for Sullivan County**
**No. S41,531     R. Jerry Beck, Judge**

_____

**No. E2000-01031-CCA-R3-CD**
**June 26, 2001**
_____

The defendant, Rhonda Grills, was convicted of facilitation of the felony rape of a child less than 13 years of age.  The trial court imposed a Range I sentence of 10 years.  The defendant was fined $25,000.00.  In this appeal of right, the defendant challenges the sufficiency of the evidence.  Because the evidence is adequate to support the facilitation of the rape of a child, the judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Keith A. Hopson, Kingsport, Tennessee, for the appellant, Rhonda Grills.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; and James Goodwin, Gregory A. Newman, and Mary Katharine Harvey, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The male victim, BG,[1] was born July 25, 1986.  In April of 1997, he lived in Kingsport with the defendant, who is his mother, and two siblings.  The defendant's mother, sister, and a niece lived in the same residence.  The defendant's boyfriend, Darryl Elkins, often stayed overnight at the residence.

On one occasion, Elkins and the defendant had been drinking.  The defendant lost consciousness due to the excessiveness of her drinking, and, according to the victim, Elkins entered

_____

[1]It is the policy of this court not to identify minor victims of sex crimes.

the victim's bedroom, jumped on top of him from behind, and began to bounce up and down on him as he lay in his bed. The victim, who was lying on his stomach, was dressed only in boxer shorts. The victim called for help and testified at trial that his first cousin, Roy Carrico, who was visiting the residence, pulled Elkins away and warned him not to touch the victim again. The victim testified that he did not tell his mother or anyone else of the incident "[b]ecause [he] was ashamed of what [Elkins] had done to [him]."

About two weeks after the initial incident, the victim was in his bedroom, lying on his stomach, and listening to music on the radio. Elkins entered his room and shut the door. According to the victim, the defendant then entered the room and watched as Elkins removed his own pants and then those of the victim and "stuck his wiener up my butt," keeping "it there for about five minutes . . . [before] I felt something gooey." According to the victim, Elkins then threatened to kill him if he told anyone else about the incident. During the assault, Elkins held a knife to the victim's throat. The victim testified that the defendant did nothing, even when he resisted and told Elkins to "get off of me." After the assault, "Mom and Darryl left the residence." Later, the defendant's children were removed from the home for unrelated reasons and placed into foster care.

Initially, the victim told no one of the incident but had difficulties afterwards with soiling his underwear. Later, after moving into the foster home of Georgia Martin, the victim informed her of the assault. Ms. Martin called a social worker who then notified the police. Later, the victim told his paternal grandmother and his aunt and uncle. At the direction of the defendant, he claimed that Roy Carrico was guilty of the rape. Ultimately, the victim acknowledged that he had been untruthful with authorities and named Elkins as his assailant.

At the request of the Department of Human Services, John Heise, a pediatrician in Kingsport, treated the victim. The medical history he was provided included information that the victim had been anally penetrated by an individual named Darryl. Dr. Heise recalled that the victim stated that the time of penetration was about five minutes until "he felt a gooey substance." Dr. Heise described the victim's rectal area as "slightly open or gaping when it should have been closed tight." He determined that the physical changes were consistent with the complaints made by the victim.

Elkins, who was tried jointly with the defendant,[2] called Carrico as a witness. When asked about the victim's claim that he had called for help during the first incident with Elkins, Carrico responded, "[T]hat's a lie." Carrico, who wore jail clothing to the trial, testified that he had never pulled Elkins off the victim and had never warned Elkins not to touch the victim. On cross-examination by the state, it was established that Carrico, who had been convicted of two aggravated assaults, was a prisoner at a jail in Sullivan County. Carrico also admitted a 1994 theft offense.

The defendant testified on her own behalf. She denied that the incident ever occurred and claimed that she "would not stand by and let somebody hurt [her] child." The defendant, who acknowledged a conviction of fraud in 1995, testified that she had never instructed her "son to lie

---

[2]Elkins was found guilty of felony rape of a child and attempted rape of a child.

on [any]body." She acknowledged that Elkins shared a residence with her and her family at the time the victim contended the offense took place. The defendant also conceded that she continued her relationship with Elkins. The defendant testified that by the time of the trial, their relationship had ended. She acknowledged that Carrico was her first cousin.

Detective Penny Kindle of the Kingsport Police Department was called as a defense witness. She recalled having questioned the victim about a year after the incident. Detective Kindle testified that at that time, the victim made no mention of the involvement of the defendant.

The defendant challenges the sufficiency of the evidence. She contends that the testimony offered by the state, even if taken as true, is inadequate to convict because it does nothing other than establish that she sat in a chair during the course of the rape. In response, the state alleges the proof demonstrated "substantial assistance" in the commission of the felony.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). The relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). This court may neither reweigh nor reevaluate the evidence; nor may this court substitute its inferences for those drawn by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). The evidence is sufficient when a rational trier of fact could conclude that the defendant is guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979). The defendant has the burden of demonstrating that the evidence is not sufficient when there is a challenge to the sufficiency of the evidence. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Rape of a child, a Class A felony, is defined as follows:

(a) Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age.

Tenn. Code Ann. § 39-13-522(a) (1997).

A person is "criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a).

Here, the jury accredited the testimony of the victim who, at the time of the rape, was in the physical and legal custody of the defendant. Their assessment of the truthfulness of the victim at trial is critical to our own conclusions reached in this appeal. By closing the door to the bedroom and by undertaking a passive role while her minor son was sexually molested by her adult boyfriend, the defendant tacitly approved of the conduct. A parent has a duty to her child and the failure to fulfill that obligation may result in criminal culpability. See, e.g., State v. Hodges, 7 S.W.3d 609, 623 (Tenn. Crim. App. 1998). In State v. Angela Renee Gates, No. E1998-00131-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Jan. 21, 2000), this court affirmed a conviction for facilitation of aggravated child abuse where the defendant, the mother of the victim, allowed her boyfriend to administer physical abuse. When there is such a duty, the failure to take action is tantamount to substantial assistance in the crime. That the defendant failed to take responsible action at the time of the rape and later encouraged the victim to lie about the identity of his assailant are circumstances which would warrant a conviction for facilitation to commit the rape. In our view, the evidence was sufficient.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

-4-