IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 24, 2006

**DARRYL LEE ELKINS v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Sullivan County**
**No. C48,769      R. Jerry Beck, Judge**

---

**No. E2005-02153-CCA-R3-PC - Filed January 7, 2008**

---

AND

**RHONDA GRILLS v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Sullivan County**
**No. C47,524      R. Jerry Beck, Judge**

---

**No. E2005-02242-CCA-R3-PC**

---

The petitioners, Darryl Lee Elkins and Rhonda Grills, were jointly tried and convicted of offenses against the minor child of Rhonda Grills by the Criminal Court for Sullivan County. Petitioner Elkins was convicted of rape of a child (Class A felony) and attempted rape of a child (Class B felony). He was sentenced to twenty-five years with a fine of $50,000 for the Class A felony and to twelve years for the Class B felony, to be served consecutively. Petitioner Grills was convicted of facilitation of rape of a child (Class B felony) and sentenced to ten years with a fine of $25,000. Each petitioner appealed, and their sentences were affirmed. See State v. Elkins, 102 S.W.3d 578 (Tenn. 2003); State v. Grills, 114 S.W.3d 548 (Tenn. Crim. App. 2001). Both petitioners subsequently filed petitions for post-conviction relief, which are the subject of this appeal. The post-conviction court granted Petitioner Elkins a new trial on his conviction for attempted rape of a child but denied relief on the conviction for rape of a child. Petitioner Grills was denied any post-conviction relief. The State, Petitioner Elkins, and Petitioner Grills have all appealed from the order of the post-conviction court. After careful review, we affirm the judgment of the post-conviction court granting relief to Petitioner Elkins, and we affirm the denial of the remaining issues on appeal for both Petitioner Elkins and Petitioner Grills.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which James Curwood Witt, Jr., J., joined. Joseph M. Tipton, P.J., filed a separate concurring opinion.

Larry Dillow, Kingsport, Tennessee, for the appellant, Darryl Lee Elkins.

Gene Scott, Jr., Johnson City, Tennessee, for the appellant, Rhonda Grills.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and James F. Goodwin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

The facts underlying the petitioners' convictions are as follows. In April 1997, Petitioner Darryl Lee Elkins sexually confronted the eleven-year-old victim in this case on two separate occasions in Kingsport, Tennessee. The victim, who was thirteen years old at the time of trial, testified that the incidents occurred while he was living at his maternal grandmother's house. The victim said that his mother, brother, sister, and aunt stayed at his grandmother's home on a regular basis. The victim also testified that his mother's boyfriend, Petitioner Elkins, also stayed at his grandmother's home on occasion.

The first sexual encounter between Petitioner Elkins and the victim occurred in early April 1997, when the petitioner entered the victim's bedroom at night while the victim was lying face down on his bed in his underwear. Elkins positioned himself on top of the victim and began "bouncing" on him. The victim told the petitioner to stop, but he refused. The victim testified that he called for help and was assisted by his first cousin, Roy Carrico, who the victim claimed pulled Elkins off of him and warned the petitioner never to touch the victim again. Although he could not see the petitioner's face at the time of the attack, the victim identified Elkins by the distinctive tattoos on his arm and hands. During the attack, the petitioner did not remove the victim's underwear. The victim did not know if the petitioner wore pants during the attack. Additionally, he testified that he did not tell anyone about the incident because he was embarrassed by what Elkins had done to him.

Approximately two weeks later, Petitioner Elkins again entered the victim's room along with the victim's mother, Petitioner Grills, while the victim was lying on his bed listening to music. On this occasion, while the victim's mother watched from a chair beside the bed, Elkins removed his pants and then the victim's clothes and positioned himself on top of him. The victim testified that he felt Elkins insert his "weiner" into his rectum. He said that the penetration lasted for approximately five minutes until he felt a "gooey" substance. He also said that Elkins held a knife against his throat and threatened to kill him if he told anyone what happened. After the rape, the victim became unable to control his bowel movements and repeatedly "soiled his pants."

The victim and his siblings were removed from his mother's care and placed in foster care for other reasons shortly after the rape. The victim later reported to his foster mother that he had been raped. His foster mother contacted the police and the social worker assigned to the victim. At trial, the victim offered conflicting testimony as to what he told his counselor regarding the incidents. He said that he initially told the counselor that his cousin was responsible for the attacks because his mother had instructed him to do so. On cross-examination, he testified that he told the counselor he had been raped by Elkins. The victim also gave conflicting statements to police concerning whether his mother was present at the time of the rape.

Dr. John Heise testified that he examined the victim after the victim was referred to his office by the Department of Human Services. He testified that the victim initially told him that Elkins had sexually accosted him twice and that the rape occurred on the second occurrence. The doctor said that the victim's rectum had lost much of its natural tone in addition to being "slightly open or gaping when it should have been closed tight." He said that this condition was consistent with what the victim told him about being anally penetrated. He testified that the victim often experienced encopresis, an oozing and involuntary leakage of feces from the rectum. He opined that the victim suffered psychic trauma as a result of the rape and that the encopresis was most likely the result of the physical injury.

The defense presented Roy Carrico as a witness who testified that he had never seen Elkins attack the victim and denied that he ever pulled Elkins off of the victim.

The victim's mother, Petitioner Grills, testified that Petitioner Elkins stayed overnight with her at her mother's home. However, she claimed that, at the time of the incident, the victim was no longer living in his grandmother's home. She said that the victim slept in his grandmother's room when he stayed at his grandmother's home. She testified that she had no personal knowledge of either the attempted rape or the rape of the victim. She said, "I would have killed Darryl. I would not stand by and let somebody hurt my child." She also denied that she told the victim to say it was Roy Carrico who attacked him. She acknowledged that she continued her relationship with Elkins after the allegations were made.

Both petitioners were convicted for their offenses. Elkins was convicted of one count each of rape of a child and attempted rape of a child. Grills was convicted of facilitation of rape of a child. Elkins received a total effective sentence of 37 years. Grills received a sentence of ten years. See State v. Elkins, 102 S.W.3d 578 (Tenn. 2003); State v. Grills, 114 S.W.3d 548 (Tenn. Crim. App. 2001).

At the post-conviction hearing, Petitioner Elkins testified that he and his trial counsel did not discuss lesser included offenses and that counsel did not request the jury be charged with the lesser included offenses. He claimed that he learned about the lesser included offenses of child abuse and attempted child abuse while in prison. Elkins claimed that his counsel failed to fully investigate his case and failed to call all the witnesses he wanted to testify. He did acknowledge that he discussed his case with counsel on several occasions. He said he assumed counsel was preparing for his case,

but they never discussed trial strategy or defenses. He said that he wanted other witnesses, specifically Shonda Woliber, Barbara Shaffer, and James Dixon, to testify because he thought they would be helpful to his defense. He maintained his innocence throughout his testimony. Elkins said that counsel should have called the victim's school principal to testify that, prior to the alleged incidents, he had sent the victim home from school more than once because the victim had soiled his pants.

Shonda Marie Woliber, the victim's aunt, testified that the victim never told her that Elkins raped or molested him. She said that the defense attorneys asked her about the rape and that she told them the victim did not tell her about those incidents. She testified that the defense attorneys told her that there would be no need to call her because she had no knowledge of the incidents. She said that she found out about the rape when her mother and sister told her about it following a court hearing. She acknowledged that she was very upset with both petitioners.

Barbara Shaffer testified that the victim was her grandson and that Grills was her ex-daughter-in-law. She said that she knew Elkins. She testified that the victim did not tell her about the rape. She said that she learned of the rape after a court hearing and that the news "blowed [sic] [her] mind." She said that she met with Elkins' trial counsel and asked, "Sir, how can you defend two people that do a kid like that?" She said that she told them that she learned of the abuse later.

Elkins' counsel at the trial and in the appeal testified that he represented Elkins at trial in September 1999. Counsel testified that he was an experienced trial lawyer and had practiced criminal law since 1984. He said that he met with Elkins on several occasions when they discussed their defense strategy. He said that Elkins claimed he did not commit these crimes. He testified that their defense was centered around the credibility of the victim and that they discussed in detail how to approach the allegations made and, in effect, destroy the victim's credibility. Counsel testified that he spoke with the witnesses Elkins alleged should have been called to testify and, as a result, he decided against calling them as witnesses. Ms. Shaffer was very angry at Elkins and would have hurt him with her testimony. Ms. Woliber did not volunteer any information that would have been helpful to the defense. Counsel and Elkins met and discussed the pros and cons of each witness.

Counsel said that he met with the victim before and during trial to question him about his encopresis. Additionally, he met with Mr. Dixon and examined the school records for mention of the victim's encopresis but saw "nothing to offer in terms of proving that there was any encopresis before the rape occurred." On cross-examination, counsel said that Elkins agreed with his reasoning that Mr. Dixon should not be called as a witness.

Counsel testified that he thoroughly researched the causes of encopresis and that the transcript would reflect that he had discussed his research in a conversation with the trial judge. He said that he decided not to request an expert because he did not feel an expert was needed. He testified that he discussed his trial strategy regarding the doctor with his client. Counsel believed that Dr. Heise had given an accurate description of the cause of encopresis and that any other evidence would have been "similar if not identical." He testified that their theory was that the victim

suffered from the condition when he was young because he witnessed a traumatic altercation between his parents in which a shotgun was used, his mother suffered a broken arm, and the police were involved.

Counsel testified that he represented Elkins on appeal and that he did not realize that State v. Burns, 6 S.W.3d 453 (Tenn. 1999), had been decided in 1999. He said he filed a general motion in every criminal case, asking the trial court to instruct the jury on all lesser included offenses, because he did not know at the time that child abuse was a lesser included offense. He testified that he and the counsel for Petitioner Grills worked together as much as possible to develop a trial strategy. He said that they discussed the scientific proof at trial, including the testimony of Dr. Heise and how they would cross-examine him. Counsel testified that he asked the most questions of the doctor on cross-examination and, afterwards, conferred with both defense counsel and the petitioners to determine whether to ask additional questions.

Counsel testified that he proposed all lesser included offenses which he believed fairly fit the law and the facts as they came in during the trial. He said that he talked with Elkins before and during the trial and asked him if there was anything else he wanted him to ask or say. Elkins was well aware of their strategy and even remarked to counsel as the jury went out, "Well, I think we were a little better prepared than they were."

Petitioner Grills testified that the court should have instructed the jury on the lesser included offenses of facilitation of rape of a child: child abuse, facilitation of child abuse, facilitation of aggravated sexual battery, facilitation of sexual battery, and facilitation of assault by offensive touching. She contended that her counsel should have sought those instructions and should have raised the lesser included offense issue on appeal.

Counsel for Grills testified that he did not request the instructions on the offenses of facilitation of child abuse or child abuse because he was unaware that they were lesser included offenses of rape of a child. He fully reviewed the jury charge before the trial court gave the instructions and said he did not find it appropriate to request instructions on facilitation of aggravated sexual battery and facilitation of assault by offensive touching. He stated that he did extensive research on the lesser included offenses and could not find anything that fit because it was a facilitation charge. Grills' counsel did not recall if he was aware of the Burns decision when he wrote the appellate brief. He said that, based on his knowledge of the case and the existing law, the trial court properly instructed the jury regarding facilitation of rape of a child. He agreed that both defense counsel worked together in forming a trial strategy. He echoed the testimony of Elkins' counsel that there was nothing helpful Mr. Dixon could add regarding the existence of encopresis prior to the victim's rape.

The post-conviction court found that neither counsel was ineffective for failing to anticipate the decision in Burns. The post-conviction court found that no lesser included offenses were given in Elkins' attempted rape of a child case and further found that it was constitutional error to fail to charge attempted aggravated sexual battery and attempted child abuse. The court found that it was

harmless error as to Grills to fail to charge her proposed lesser included offenses and specifically found that any error for failing to instruct the proposed lesser included offenses had no effect on the jury at trial. Elkins' allegation that counsel was not adequately prepared regarding the encopresis issue was determined to be without merit. Elkins presented no proof as to what another expert might say that would have been of assistance.

Analysis

First, we address the State's argument that the post-conviction court erred in granting Petitioner Elkins post-conviction relief as to his attempted child rape conviction. The State contends that any error in failing to charge lesser included offenses was harmless and that counsel was not ineffective because Elkins failed to prove any prejudice. Elkins simply states that it was plain error for the trial court to fail to charge lesser included offenses and urges this court to affirm the relief granted by the post-conviction court.

In order to prevail on a claim that trial counsel and/or appellate counsel were ineffective for failing to challenge the trial court's failure to instruct the jury on lesser included offenses, the petitioner must prove by clear and convincing evidence that counsel's performance was deficient in failing to present the issue and that the petitioner was prejudiced by its omission. Tenn. Code Ann. § 40-30-110(f).

To prove deficient performance of either trial counsel or appellate counsel, the omission must be "so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Strickland v. Washington, 466 U.S. 668,688; 104 S. Ct. 2052, 2064 (1984). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

To prove trial counsel's omission was prejudicial, the petitioner must show that, but for the omission, there was a reasonable probability that the outcome of the trial would be different. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

To prove appellate counsel's omission was prejudicial, the petitioner must show that there was a reasonable probability that the outcome of the appeal would be different. Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764 (2000); Brown v. Polk, 135 Fed. Appx. 618, 628 (2nd Cir. 2005); Mapes v. Tate, 388 F.3d 187, 194 (6th Cir. 2004); Thompson v. Spencer, 111 Fed. Appx. 11, 13 (1st Cir. 2004); Hemstreet v. Greiner, 367 F.3d 135, 142 (2nd Cir. 2004).

A failure on the part of the petitioner to prove both deficient performance and prejudice precludes any relief. Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

-6-

We conclude that Petitioner Elkins failed to prove that trial counsel was deficient in his performance in failing to anticipate the ruling in State v. Burns, 6 S.W.3d 453 (Tenn. 1999). Trial counsel cannot be held to a standard of being clairvoyant concerning a case not yet decided. The Burns opinion was released a month after the petitioner's jury trial. Even if trial counsel was aware of the issues presented in the Burns case, he could not have foretold its holdings or the impact this case would have on jurisprudence in Tennessee. Looking at the knowledge of trial counsel at the time of the alleged error, we conclude his performance was not deficient.

Although the law at the time of trial may be confusing and unclear, it may be settled and clear at the time of appellate consideration. We recognize Burns as a landmark case that set a new standard for determination of what lesser included offenses were but, equally important and more germane to the issues at hand, sought to explain when a lesser included offense instruction was required. When a lesser included offense instruction was required, pre-Burns, was confusing and unclear. Carpenter v. State, 126 S.W.3d 879, 891 (Tenn. 2004).

Next, we determine whether appellate counsel rendered deficient performance for failing to raise a challenge to the trial court's failure to charge any lesser included offenses post-Burns. Burns was filed on November 8, 1999. Petitioner Elkins' case was not argued before our supreme court until January 7, 2003, and its opinion was filed on April 20, 2003.

We conclude that an objectively reasonable attorney, keeping abreast of legal developments related to his case as he should, would have discovered Burns as providing his client a solid, meritorious argument and providing controlling precedent as to when a trial court must charge lesser included offenses, which should have been discovered by appellate counsel and brought to the court's attention. Although we are unable to be certain as to what month or week appellate counsel should have discovered such a meritorious argument, it was clearly before argument was scheduled in our supreme court on January 7, 2003.

After the Burns decision in 1999, this court began reviewing when a lesser included offense instruction was required. In April of 2000, State v. Carter, 2000 Tenn. Crim. App. LEXIS 340, was filed, and a panel of this court concluded that plain error occurred in failing to instruct the jury on lesser included offenses citing to the holding in Burns as controlling authority. Thereafter, Burns was cited in more than 400 Tennessee Court of Criminal Appeals' cases between December of 1999 and December of 2002.

Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. King v. State, 989 S.W.2d 319, 334 (Tenn. 1999); Campbell v. State, 904 S.W.2d 594, 596-97 (Tenn. 1995). Indeed, "experienced advocates have long 'emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.'" Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993) (quoting Jones v. Barnes, 463 U.S. 745, 751, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983)); see also Smith v. Robbins, 528 U.S. 259, 288, 145 L. Ed. 2d 756, 120 S. Ct. 746 (2000). The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion. Jones, 463 U.S. at 751; King, 989 S.W.2d at

334; Cooper, 849 S.W.2d at 747. Therefore, appellate counsel's professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference. See Campbell, 904 S.W.2d at 597; see also Strickland, 466 U.S. at 689. We should not second-guess such decisions, and every effort must be made to eliminate the distorting effects of hindsight. See Campbell, 904 S.W.2d at 597; see also Strickland, 466 U.S. at 689; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Deference to counsel's tactical choices, however, applies only if such choices are within the range of competence required of attorneys in criminal cases. Campbell, 904 S.W.2d at 597.

In the instant case, appellate counsel simply stated he was unaware of the Burns case. We conclude that an objectively reasonable attorney, keeping abreast of legal developments related to his case, as he should, would have discovered Burns and would have noticed that we had applied Burns in other cases decided before the petitioner's case was argued before our supreme court. Solid, meritorious arguments based on directly controlling precedent should be discovered by effective appellate counsel and brought to the court's attention. Upon this record, we conclude that appellate counsel was deficient in his performance in failing to discover or bring to the court's attention the Burns issue on behalf of this petitioner.

Next, we must inquire as to whether Petitioner Elkins was prejudiced by appellate counsel's omission. To that end, we determine whether there was a reasonable probability that the outcome of Elkins' appeal would have been different.

Burns noted that offenses are lesser included offenses of the greater offenses when so designated by statute, and the Burns court specifically exemplified the comment by referring to Tennessee Code Annotated section 39-15-401(e), which designated child abuse as a lesser included offense of, inter alia, a sexual offense wherein the victim is a child and the evidence supports a charge under this section. Burns, 6 S.W.3d at 467. Also, Burns "b" rubric for lesser included offenses was crafted to address situations when the "lesser included offense" contains an element not required for the greater offense" and when the unavailability of a lesser included offense in that situation "deprives the defendant of the right to present a defense." Id. at 465. The court cited the State charging rape and proving sexual battery with no evidence of penetration as the "classic example" of such a sexual battery within a rape charge. Id. Thus, Burns at least portended the case law that later held that aggravated sexual battery is a lesser included offense of aggravated rape. The record supports a holding that petitioner Elkins' counsel on direct appeal performed deficiently in not raising the lesser included offense issues on the attempted child rape count. Although petitioner Elkins had been tried and convicted by a jury before Burns was decided, Burns applied "retroactively to cases that were either in the 'appellate pipeline' or pending at the time [Burns was] announced." Frederick K. Morrow v. State, No. M2005-00554-CCA-R3-PC, slip op. at 13 (Tenn. Crim. App. at Nashville, July 11, 2006)(citing State v. Stokes, 24 S.W.3d 303 (Tenn. 2000)); See Harold Wayne

Shaw v. State, No. M2003-02842-CCA-R3-PC, slip op. at 17 (Tenn. Crim. App. at Nashville, May 25, 2005). See, e.g. State v. Bowles, 52 S.W.3d 69 (Tenn. 2001).[1]

We conclude, in view of Burns and Bowles, that the appellate courts would have held that attempt to commit aggravated sexual battery was a lesser included offense of attempt to commit rape of a child, had the issue been raised on appeal. Although the proof at trial would have supported a verdict of aggravated sexual battery, see Tenn. Code Ann. § 39-13-504(a)(4) (2003) (proscribing aggravated sexual battery as a Class B felony), it is not a "lesser" offense than attempt to commit rape of a child, also a Class B felony, see id. § 39-13-522 (proscribing rape of a child as a Class A felony); see also id. § 39-121-107(a) (grading attempt as one offense class less than the class of the offense attempted). However, attempt to commit aggravated sexual battery, as a lesser included offense of aggravated sexual battery and of rape of a child, was a lesser included offense of attempt to commit rape of a child.

In Petitioner Elkins' trial, the evidence sufficiently supported a verdict of attempt to commit rape of the victim, a child. However, "[e]rror in omitting a lesser-included offense instruction is not negated merely because the evidence also is sufficient to convict on the greater offense." State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002).

We also conclude that the appellate courts would not have viewed the instructional error as harmless. "When a lesser-included offense instruction is improperly omitted, . . . the harmless error inquiry is the same as for other constitutional errors: whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." Allen, 69 S.W.3d at 191. The appellate court reviewing such an issue should "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." Id. The evidence of Petitioner Elkins' initial assault of the victim demonstrated no penetration – an element of rape. The evidence, however, indicated attempted aggravated sexual battery, see Tenn. Code Ann. § 39-13-504 (2003), and attempt to commit child abuse, see id. § 39-15-401(a) (2003).[2] Therefore, we conclude that the post-conviction court properly granted relief on the conviction of attempt to commit child rape.

Next, Petitioner Elkins contends that trial counsel was ineffective for failing to interview witnesses that he wanted called to testify on his behalf and for failing to adequately counter the State's expert witness. Specifically, Elkins contends that counsel did not instruct the petitioner or his family that they could hire an expert witness to testify on his behalf and that counsel did not effectively cross-examine the expert for the State.

---

[1] Both Burns and Bowles made the issue of whether attempted child abuse and attempted aggravated sexual battery were lesser included offenses of attempted child rape clear and obvious, which relates equally to deficient performance and prejudice.

[2] Attempt to commit child abuse would be the appropriate lesser included offense, as opposed to child abuse, because the record was devoid of any evidence that this offense resulted in the infliction of injury upon the victim. See id.

During the post-conviction hearing, counsel testified that he made a tactical decision not to request an expert to explain the causes of encopresis. He researched the causes of encopresis and testified that the transcript reflected a conversation with the trial judge that he had conducted research on the issue. He did not request an expert to explain the cause of encopresis because he did not think he needed one. The post-conviction court found that counsel properly developed the causes of encopresis at trial and that counsel adequately represented Elkins.

Our review of the record reflects that the findings of the post-conviction court are supported by the record. Counsel made a strategic decision not to request an expert after conducting an adequate amount of research into the causes of encopresis. His research revealed that testimony of another expert would have been similar if not identical. The post-conviction court found that trial counsel was adequately prepared and made a sound tactical decision. Petitioner Elkins is not entitled to the benefit of hindsight; he may not second-guess a reasonably based trial strategy; and may not criticize a sound, but unsuccessful, tactical decision made after adequate preparation for the case. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Here, the petitioner has not met his burden of proving that a different expert would have aided his defense or that counsel did not adequately cross-examine the State's expert. Therefore, he is entitled to no relief on this issue.

Petitioner Elkins contends that counsel was ineffective for failing to use several witnesses he wanted called to testify on his behalf. Specifically, he wanted two of the victim's relatives called to testify that the victim had never told them of any sexual abuse. Counsel testified that he spoke with the proposed witnesses and decided not to call them because they had no knowledge of the allegations until after charges had been filed. Counsel testified during the hearing that he met with Ms. Shaffer prior to trial and that she indicated she knew nothing of the sexual allegations but was "very angry" at the petitioner. Counsel concluded Ms. Shaffer's testimony would hurt the petitioner. Counsel also met with the other proposed witness, Ms. Woliber, and concluded she would not aid in the petitioner's defense because she was also unaware of the allegations prior to the petitioners' first court appearance. During the post-conviction hearing, both witnesses testified that they had no knowledge of any sexual assault on the victim until after the charges had been filed and, therefore, would not have been able to testify about the alleged abuse.

Trial counsel interviewed both witnesses and made the strategic decision not to call them to testify for the defendant. He concluded that their testimony would not aid the defense of the petitioner. Petitioner Elkins has failed to show that the proposed witnesses would have aided in his defense; therefore, he is not entitled to any relief.

Next, Petitioner Elkins argues that trial counsel was ineffective for failing to file a pre-trial motion in limine restricting the State's witnesses from testifying that the alleged victim had told them that the petitioner allegedly "bounced" on top of him and subsequently raped him. The crux of Elkins' argument is that counsel's failure to object to the admission of the statements prevented him from showing that either the trial court or this court would have entertained the motion in limine. Elkins then acknowledged that this issue is not enough to show deficient performance by

counsel. We agree. This petitioner has failed to show how the proposed motion would have been successful or to state any grounds to support his argument. Therefore, this issue is without merit, and Petitioner Elkins is entitled to no relief.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment of the post-conviction court granting relief to Petitioner Elkins, and we affirm the denial of the remaining issues on appeal for both Petitioner Elkins and Petitioner Grills.


_____
JOHN EVERETT WILLIAMS, JUDGE