IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 15, 2021

**STATE OF TENNESSEE v. MISTY ROSE BROWN**

**Appeal from the Circuit Court for Giles County**
No. 14577    Stella L. Hargrove, Judge

_____

**No. M2020-01721-CCA-R3-CD**
_____

The Defendant-Appellant, Misty Rose Brown, acting pro se, was convicted of one count of child abuse and neglect and one count of facilitation of rape of a child following a trial.[1] The trial court sentenced the Defendant to twelve years for the facilitation conviction and eleven months and twenty-nine days for the child abuse and neglect conviction, to be served concurrently. The Defendant, again acting pro se, appeals her convictions and argues that the evidence is insufficient to sustain her convictions. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, JR., J., joined.

Misty Rose Brown, Pulaski, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Emily Crafton, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

A Giles County grand jury indicted the Defendant on one count of child abuse and neglect and one count of facilitation of rape of a child on November 14, 2018. The indictment stemmed from the Defendant allowing a nineteen-year-old registered sex offender to repeatedly rape her daughter, the nine-year-old victim.

---

[1] We initially observe that the record contains both a written waiver of the Defendant's right to counsel pursuant to Rule 44(b)(2) and transcripts from hearings throughout the proceedings in which the Defendant clearly and unequivocally stated that she wished to represent herself.

The Defendant and her three children, including S.B.,[2] the nine-year-old victim, began occasionally staying at the mobile home of William Root, Sr. and Hollie Root during the summer of 2018. The Defendant, who knew the Roots because she had previously worked with and had an affair with Root, Sr., was planning to move into the Root residence permanently with her children. At any given time, numerous other members of the Root family would also stay at the home, including Mr. Root's parents, Mrs. Root's brother, and William Root, Jr., the nineteen-year-old son of Mr. and Mrs. Root.[3] Root, Jr. was a juvenile sex offender. Although the sleeping arrangements would change depending on who was staying at the residence, Root, Jr. generally slept on a mattress on the back porch or in a tent outside. The Defendant and her children would usually stay with the Roots on the weekends, but the Defendant would also leave the children in the care of Mrs. Root while she worked. Root, Jr., Mr. Root, and Mrs. Root all testified at trial that they told the Defendant that Root, Jr. was on the juvenile sex offender registry when she and her children first started staying with the Roots.

**Trial Evidence.** At trial, Root, Jr. testified about the events leading up to his and the Defendant's arrests on August 25, 2018. On direct examination, Root, Jr. stated he and S.B. began a "relationship" about a week or two after she started staying at the Root home. Root, Jr. explained that he and S.B. went to the Defendant and asked her for permission to date after he touched S.B. sexually for the first time. The Defendant agreed, telling Root, Jr., "You and my daughter can date." Root, Jr. stated he made it clear to the Defendant that the relationship would include sex, telling her, "your daughter wanted to know if she can have sex with me." The Defendant responded, "Yes." Root, Jr. testified he brought up having sex with the Defendant's daughter again as they were driving the children to school one day. After telling the Defendant that he was having sex with her daughter, the Defendant responded, "that's all right with me because I approve it, I accept it." According to Root, Jr., the Defendant never told him to stop engaging in sexual activity with her daughter. Root, Jr. further testified he would have sex with S.B. in his tent or on the mattress on the back porch "five or six times in the day." He estimated that he had had sex with S.B. approximately thirty times over the course of the week or two leading up to his arrest. Root, Jr. stated that the last time he had sex with S.B. was the night before he was arrested on August 25, 2018.

The State also submitted authenticated records of text messages to show the Defendant would allow Root, Jr. and her daughter to send messages to each other using the Defendant's cell phone. Root, Jr. testified he and S.B. would sometimes message each

---

[2] It is the policy of this court to refer to minor victims by their initials only.

[3] William Root, Sr. will be referred to as "Mr. Root" and William Root, Jr. will be referred to as "Root, Jr." from this point forward.

other directly using the Defendant's phone or that he would ask the Defendant to give S.B. messages from him. One text exchange between Root, Jr. and the Defendant on August 21, 2018 read:

Defendant: Hey sexy it's me your baby girl[.] I love you baby. [heart emojis]

Root, Jr.: Hey, beautiful, it's me, your babe. I love you, too, babe girl, to the moon and back, to earth and the planets and people and everything. [heart emojis]

When questioned about the messages on direct examination, Root, Jr. testified he was messaging S.B. directly during that exchange. Another text exchange from the same day read:

Root, Jr.: What is she doing[?]

Defendant: Eating and watching [L]ion King[.]

Root, Jr.: Cool tell her that her man ask[ed] [and] loves [her] too[.]

Root, Jr. testified this exchange was between himself and the Defendant but that they were referring to S.B. in the messages. The messages also showed that Root, Jr. asked the Defendant to send him a photo of S.B on August 24, 2018. The Defendant responded by sending him a photo of S.B. lying in bed with a large shirt on. Root, Jr. claimed he wanted the photo to send to his mother.

On August 25, 2018, Lieutenant Shane Hunter, an officer in the Giles County Sheriff's Department, went to the Root residence with a social worker from the Department of Children Services (DCS) after receiving an anonymous tip that a child was being sexually abused by an "in-home perpetrator." The Defendant was not present when Lieutenant Hunter first arrived, but Mr. and Mrs. Root, Root, Jr., and the Defendant's three children were home. After contacting the Defendant for permission to remove the children from the home, Mrs. Root took the Defendant's children to the Giles County Sheriff's Department. Later that same day, Lieutenant Hunter conducted recorded interviews with the Defendant, S.B., and Root, Jr. at the Sheriff's Department as a part of his investigation into the child abuse claims. Lieutenant Hunter testified about what was said during the interviews and the interview tapes were played in court for the jury.

Lieutenant Hunter testified he first briefly interviewed the Defendant to gather general information about the family and their living situation. He stated that he did not

consider that the Defendant might be a suspect until his next interview with S.B. During her interview, S.B. revealed to Lieutenant Hunter that Root, Jr. had touched her private parts with his hands and his penis, made her "put his penis in her mouth for oral pleasure," and penetrated her vaginally with his penis. She told Lieutenant Hunter that Root, Jr. touched her "every night" and that the last time he had touched her had been the night before, on August 24, 2018. She also talked about what the Defendant knew about the situation: "[The Defendant] thinks we are dating. . . . Root, Jr. told her, but she doesn't really want anyone to go to jail."

Lieutenant Hunter explained this new information prompted him to conduct a second interview with the Defendant, in which he told the Defendant that Root, Jr. had been molesting S.B. by "penal, oral, and digital penetration." In response, the Defendant told Lieutenant Hunter she knew that Root, Jr. was a "youthful offender" who had previously served three years in prison for performing "these same . . . sexual acts against children." Lieutenant Hunter also stated that the Defendant told him "she knew that something had been going on for a couple of weeks, that she had failed as a parent, and that she knew [Root, Jr.] had fondled her child" because Root, Jr. had told her that he had "fondled [S.B.] with his fingers." She told him that this conversation occurred while they were driving down the road with the children in the car. Instead of calling the police, the Defendant told Root, Jr. and S.B. to tell Mr. and Mrs. Root because "she had to work." She claimed she told Root, Jr. to "stop messing with her daughter" after discovering the abuse.

Lieutenant Hunter testified he asked the Defendant if she had ever seen anything inappropriate occur between Root, Jr. and S.B., to which she responded that she would know "sexual signs to look for" because S.B. had previously been molested by her stepfather[4] when she was around four-years-old. He stated that the Defendant admitted to becoming suspicious after finding "a lot of blood" on a blanket inside the tent where Root, Jr. and S.B. would spend time together after he asked her about potential "red flags." This prompted her to examine S.B.'s panties for signs of blood or semen. She told Lieutenant Hunter that, despite her suspicions, she did not contact police, remove S.B. from the home, or question S.B. about the blood.

Lieutenant Hunter also testified about the final interview he conducted with Root, Jr., in which Root, Jr. admitted to having a sexual relationship with S.B. He told Lieutenant Hunter he had asked the Defendant's permission to have sex with S.B. In response, the Defendant told Root, Jr., "if she's ready to have sex, then she can." When asked if Root,

---

[4] This person is referred to as both S.B.'s biological father and stepfather at different points in the record. [V, 203-204; VII, 508]

- 4 -

Jr.'s testimony at trial had been consistent with the information he gave to him during his interview, Lieutenant Hunter confirmed that it was the same "for the most part."

The Defendant was arrested on August 25, 2018, and S.B. was placed into foster care. On January 8, 2020, the Defendant was convicted of child abuse and neglect and facilitation of rape of a child. At the sentencing hearing, which was held on December 11, 2020, the trial court imposed a 12-year sentence for the facilitation conviction, the maximum sentence for the offense, and an 11-month and 29-day sentence for the child abuse conviction. The sentences were ordered to be served concurrently. The Defendant was also placed on the sex offender registry and given a permanent no-contact order with S.B.

## ANALYSIS

The Defendant raises numerous issues in the Statement of Issues Presented for Review section of her brief, including constitutional violations, allegations of prosecutorial and judicial misconduct, criminal conspiracy, and various evidentiary issues. She also calls for an investigation against the State. As a preliminary matter, we note the Defendant's brief is inadequate in several respects under Rule 27(a) of the Tennessee Rules of Appellate Procedure. As relevant here, an appellant's brief shall include the following:

> (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
>
> . . .
>
> (4) A statement of the issues presented for review;
> . . .
>
> (7) An argument, which may be preceded by a summary of argument, setting forth:
>
> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefore, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
>
> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

Tenn. R. App. P. 27(a). Appellate courts retain the discretion to suspend or relax the requirements set forth in the Tennessee Rules of Appellate Procedure. Paehler v. Union Planters Nat'l. Bank, 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997).

Upon review, we note the Defendant's brief contains no argument section. Although the Defendant included a short section entitled "Summary of Argument," she does not directly reference any of the issues stated in her statement of issues section nor does she cite to any authorities or standards of review as required by Rule 27(a)(7). Rather, she merely states that the Giles County Court "failed to bring justice in the heinous crime against my daughter . . . and they should be held responsible for ignoring the truth . . . ." She also moved for a reversal of her conviction, a full internal investigation against the 22nd District of Tennessee, and asked for "an executive exoneration from Governor Bill Lee." Again, the Defendant cites no legal authority supporting her requests. At times, the Defendant appears to raise arguments in her Statement of Facts section, stating that the trial judge violated various Supreme Court Rules and ignored mitigating factors during sentencing, but she does not support these statements with actual arguments or citations to the record. Whether these issues were properly raised for review is also questionable as they were not stated with any specificity in the Statement of Issues Presented for Review section (the Defendant only alleges general "judicial misconduct" in her statement of the issues). See Hodge v. Craig, 382 S.W.3d 325, 335 (Tenn. Crim. App. 2012) ("an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with [Rule] 27(a)(4)"). The Defendant also failed to include a Table of Authorities as required by section 27(a)(2) despite listing it in the Table of Contents section of her brief.

It is an appellant's responsibility to ensure compliance with Rule 27(a), and "an issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of [Rule] 27(a)(7)." Id. (citing Baugh v. Novak, 340 S.W.3d 372, 381 (Tenn. 2011); see also Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Because of the deficiencies in the Defendant's brief and her failure to properly argue the issues or cite to the record or any legal authority, we may deem the issues she has presented as waived. Even if we were to consider the issues presented for review, the record does not appear to support her allegations of constitutional violations or prosecutorial and judicial misconduct. Regarding the Defendant's requests for an investigation against the State and an "executive exoneration," this Court is unable to provide her with relief.

Although it would be within the discretion of this Court to find the Defendant has waived all the issues presented in her brief as a result of the brief's technical deficiencies, we will address the issue most thoroughly discussed throughout her brief and argued for in her motion for new trial—the Defendant's contention that her convictions rest upon false evidence. All other issues have been waived.

**Sufficiency of the Evidence.** The Defendant challenges the sufficiency of the evidence used to convict her of child abuse and facilitation of rape of a child. Specifically, she claims that witnesses presented false testimony at the trial as a result of bribery, witness intimidation, and witness tampering by the prosecution, DCS, and S.B.'s foster mother. As the State points out in its brief, the Defendant's argument is essentially a challenge to the jury's findings of credibility at trial. In response, the State contends that this Court cannot reassess a jury's findings of credibility on appeal. Moreover, the evidence presented at trial was sufficient to support the Defendant's convictions. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958, S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review to be applied is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Wagner, 382, S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 208 S.W.2d 895, 897 (Tenn. 1961)).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When considering the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.

In the instant case, the Defendant was convicted of child abuse and neglect and facilitation of rape of a child. A person commits child neglect when they knowingly neglect a child under 18 and the child's health and welfare is adversely affected. State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000); Tenn. Code Ann. § 39-15-401. As relevant here, rape of a child occurs when a victim is sexually penetrated by a defendant and the victim is younger than 13. Tenn. Code Ann. § 39-13-522. A person is guilty of facilitation of a felony if, with knowledge that another intends to commit a specific felony, she furnishes substantial assistance in the commission of the felony. Tenn. Code Ann. § 39-11-403.

The Defendant contends the evidence used to convict her was insufficient because it was comprised of false testimony. She also calls the reliability of the text messages presented at trial into question by asserting that her phone went missing sometime while living at the Root residence.

Viewed in the light most favorable to the State, the proof at trial showed that the Defendant knew Root, Jr. was a registered sex offender who previously served time for committing "sexual acts against children." Despite this knowledge, the Defendant brought S.B. to stay in the same home with a sex offender and let him spend time with her unsupervised. During this time, Root, Jr. began sexually abusing S.B. by "penal, oral, and digital penetration." Furthermore, the proof showed that the Defendant not only knew Root, Jr. was sexually abusing S.B. but that she approved of their "relationship." She gave Root, Jr. and S.B. permission "to date" and later told them she accepted that Root, Jr. was engaging in sexual acts with S.B. Text messages admitted into evidence also showed that the Defendant allowed Root, Jr. and S.B. to use her cell phone to communicate with each other, at times even delivering flirtatious messages between the two. The proof showed the Defendant took no steps to stop the sexual abuse.

Despite the Defendant's assertions about the unreliability of the evidence presented at trial, the jury accredited the testimony of the witnesses and this Court will not reevaluate a jury's findings of credibility. Odom, 928, S.W.2d at 23; Henley, 960 S.W.2d at 578-79. Moreover, the evidence was sufficient to support the convictions. First, the Defendant knew Root, Jr. was engaging in a sexual relationship with her nine-year-old daughter, S.B., and allowed it to continue until law enforcement and DCS intervened. By the time the Defendant and Root, Jr. were arrested, Root, Jr. had raped S.B. approximately thirty times, unquestionably having an adverse effect on S.B.'s health and welfare. Tenn. Code Ann. § 39-15-401. There is sufficient evidence to sustain the conviction for child abuse and neglect.

Second, the proof at trial showed that Root, Jr. sexually penetrated the nine-year-old victim and that the Defendant furnished substantial assistance in the commission of the crime. This court has previously held, "A parent has a duty to her child and the failure to

fulfill that obligation may result in criminal culpability." State v. Grills, 114 S.W.3d 548, 551 (Tenn. Crim. App. 2001). Moreover, "[w]hen there is such a duty, the failure to take action is tantamount to substantial assistance in the crime." Id. Here, the Defendant furnished substantial assistance in the rape of a child by (1) expressly giving Root, Jr. permission to engage in a sexual relationship with her nine-year-old daughter, S.B.; (2) facilitating inappropriate communications between Root, Jr. and S.B. by letting them use her cell phone to message each other; and (3) failing to take any action to end the abuse, either by removing S.B. from the home where she was being sexually abused or reporting the abuse to law enforcement. See Grills, 114 S.W.3d at 551 (affirming a conviction for facilitation of rape of a child where the defendant undertook a passive role while her boyfriend raped her minor son, thereby tacitly approving the conduct); see also State v. Angela Renee Gates, No. E1998–00131–CCA–R3–CD, 2000 WL 46005 (Tenn. Crim. App., at Knoxville, Jan. 21, 2000) (affirming a conviction for facilitation of aggravated child abuse where the defendant, the mother of the victim, allowed her boyfriend to administer physical abuse). Accordingly, the evidence is sufficient, and the Defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing reasoning and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE