IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 24, 2010

## STATE OF TENNESSEE v. LANCE SANDIFER, STEPHON DANTE CUNNINGHAM, TORNITA CRENSHAW, & GLENARD THORNE

Appeal from the Criminal Court for Davidson County
No. 2007-A-591 Steve Dozier, Judge

No. M2008-02849-CCA-R3-CD - Filed December 21, 2010

Based upon events on November 7, 2006, the Davidson County Grand Jury indicted Appellants, Tornita Crenshaw, Stephon Dante Cunningham, Lance Sandifer, and Cortez Thorne for two counts of aggravated robbery, one count of aggravated burglary, and two counts of especially aggravated kidnapping. In addition, Appellants Crenshaw, Cunningham, and Thorne were indicted for two counts of facilitation to commit aggravated rape; Appellants Crenshaw and Cunningham were indicted for two counts of coercion of a witness; and Appellant Sandifer was indicted for four counts of aggravated rape. Appellants were tried jointly in August 2008. Appellants were convicted of the following crimes: Appellant Crenshaw – one count of robbery, one count of aggravated robbery, one count of aggravated burglary, one count of especially aggravated kidnapping, and one count of coercion of a witness; Appellant Cunningham – two counts of aggravated robbery, one count of aggravated burglary, two counts of facilitation of aggravated rape, two counts of especially aggravated kidnapping and one count of coercion of a witness; Appellant Thorne – two counts of aggravated robbery, one count of aggravated burglary, two counts of facilitation of aggravated rape, and two counts of especially aggravated kidnapping; Appellant Sandifer – two counts of aggravated robbery, one count of aggravated burglary, four counts of aggravated rape, one count of attempted aggravated rape, and two counts of especially aggravated kidnapping. After a sentencing hearing, the trial court sentenced the Appellants to the following effective sentences: Appellant Crenshaw – twenty-three years; Appellant Cunningham – fifty-two years; Appellant Thorne – fifty-two years; Appellant Sandifer – one-hundred and eight years. Appellants now argue several issues on appeal. These issues include: (1) that the evidence was insufficient to support their convictions (all Appellants); (2) that the trial court erred in not apply mitigating factors, applying enhancement factors, the weight given to the factors and imposing consecutive sentences (all Appellants); (3) that the trial court failed to merge the especially aggravated kidnapping convictions into either aggravated robbery or aggravated rape convictions (Appellants Sandifer, Thorne, and Cunningham); (4) that the trial court failed to grant Appellants' motions for severance

(Appellants Thorne and Cunningham); (5) that the trial court failed to merge Appellant Sandifer's four convictions for aggravated rape and attempted aggravated rape as one single act of rape; (6) that the trial court erred in denying Appellant Thorne's motion in limine to exclude the victims from the courtroom; and (7) that the trial court erred in denying Appellant Thorne's motion to require the State to elect the facts upon which it was relying for the two counts of especially aggravated kidnapping. We have thoroughly reviewed the record on appeal and conclude that Appellants' issues do not require either the reversal of any of their convictions or an adjustment to their sentences. For this reason, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Dwight E. Scott, for appellant, Lance Sandifer; Ron E. Munkeboe, Jr., for appellant, Tornita Crenshaw; Bill Collins, for appellant, Stephon Dante Cunningham; and Holly Ruskin, for appellant, Glenard Cortez Thorne.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, III, District Attorney General, and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

In November 2006, R.N.[1] and A.B. were roommates living in a two bedroom apartment in which they also ran a recording studio. R.N.'s bed and belongings were located in one bedroom, and A.B.'s bed was located in the dining room. The recording studio was located in the second bedroom. In the early morning of November 7, 2006, R.N. and A.B. were at the apartment. R.N. received a telephone call from Cortez Thorne. Thorne wanted to come to R.N's apartment to pay for studio time he had previously used. Thorne and Tornita Crenshaw arrived at the apartment around 5:00 a.m. A.B. was sleeping in her bed

---

[1] In order to protect the privacy of the victims we have chosen to refer to them by their initials.

in the dining room. Thorne, Crenshaw, and R.N. woke up A.B. She asked them to leave. Thorne and Crenshaw left. A.B. moved to R.N.'s bedroom and went back to sleep.

Around 7:00 a.m., Thorne and Crenshaw returned. R.N. opened the door to let them into the apartment. As he was closing door, Lance Sandifer and Stephon Cunningham forced their way into the apartment. Sandifer and Cunningham were brandishing a shotgun and a pistol. R.N. was ordered to get the recording equipment unplugged so the four Appellants could take the equipment. A.B. awoke to the sound of fighting. She saw Thorne pointing a gun at R.N. Thorne then pointed the gun at A.B. and ordered her into the living room.

Sandifer was in the living room holding a shotgun. When A.B. came into the living room, Sandifer took her PDA. Sandifer ordered A.B. to sit on the couch. He told her to undress. When A.B. hesitated, Sandifer yelled, "Bitch, this isn't a game. I will shoot you. Take your clothes off." A.B. complied with the request and laid down on the couch. At this time, R.N. was sitting on the end of the couch with Thorne pointing a gun at him. Sandifer ordered R.N. to perform cunnilingus on A.B. R.N. attempted to pretend to perform cunnilingus. Sandifer realized that R.N. was pretending and ordered him to do it again. R.N. performed cunnilingus as Sandifer ordered. After a few minutes, Sandifer ordered R.N. to digitally penetrate A.B.'s vagina. R.N. complied. These acts were all completed at gunpoint. Thorne took R.N. into the studio to unhook the equipment.

Sandifer retrieved a mop from the kitchen. Sandifer inserted the mop handle into A.B.'s vagina and twisted it around for about five minutes. Sandifer ordered A.B. to turn over, and he attempted to insert the mop handle into her anus. A.B. estimated that the mop handle went into her anus a half inch to an inch. Sandifer was not satisfied with the depth the mop handle would go into A.B.'s anus. He ordered her to turn over and insert the mop handle into her vagina herself. At some point Sandifer digitally penetrated A.B.'s vagina and forced her to smell his fingers. He subsequently ordered her to masturbate by inserting her own fingers into her vagina. Sandifer asked if anyone had a condom, but Appellants all replied that they did not. Sandifer started to force A.B. to fellate him, but Thorne told Sandifer that they were in a hurry and needed to leave. Crenshaw allowed A.B. to get dressed in the bedroom.

Throughout the sexual assaults, Sandifer was brandishing a weapon, and Appellants were carrying recording equipment and various items out of the apartment. Appellants were trading the weapons back and forth amongst themselves. While she was being raped, A.B. stated that Crenshaw came into the room and said, "Damn, you guys have her naked." Crenshaw smirked as she spoke. Crenshaw also pointed a gun at A.B.'s head during the rapes and demanded R.N.'s car and alternatively A.B.'s car. A.B. stated that the three other

Appellants were laughing and joking about her situation while they carried the recording equipment out to the cars in the parking lot.

When A.B. returned to the living room from changing her clothes, R.N. was tied to a chair. R.N. testified that Appellants tied him to the chair with electrical cord. Sandifer and Cunningham were beating R.N. Crenshaw forced A.B. to strike R.N.

Thorne asked A.B. if she wanted to leave with them. Because A.B. was fearful that Appellants would kill her if she stayed behind, she asked where they were going. Crenshaw, who was holding a gun at the time, stated that A.B. was coming with them. Cunningham and Crenshaw led A.B. to her own car and placed her in the backseat. When A.B. left the apartment with Cunningham and Crenshaw, R.N. was still tied to the chair. R.N. overheard Sandifer and Thorne arguing about whether to shoot him. R.N. was able to work his way out of the electrical cord and ran out of a back door in the apartment. Shortly thereafter, Thorne accidentally shot himself in the foot when he put the gun into the waistband of his pants. While Cunningham, Crenshaw, and A.B. were leaving the apartment, A.B. heard the gunshot and thought that Sandifer and Thorne had shot R.N.

R.N. ran to the neighboring apartments beating on doors and asking to use the telephone. Someone gave him a telephone, and he called the police. Shortly thereafter, R.N. saw Officer Kenneth Alexandrow in his patrol car, and R.N. flagged him down. Officer Alexandrow investigated the apartment and saw that it had been ransacked. The condition of the apartment was consistent with R.N.'s description of events.

Detective David Achord was called to the scene. R.N. described the events that had transpired in great detail. He identified Thorne as one of the perpetrators. R.N. told Detective Achord that Crenshaw, Cunningham, Sandifer, and Thorne all handled the two weapons during the burglary and rapes. R.N. described the way Appellants would transfer the weapons among themselves. As part of his investigation, Detective Achord collected the mop handle and sent it for DNA testing. The TBI agent who tested the mop found A.B.'s DNA on the mop and concluded that the level of concentration of DNA was much greater than that of someone who had used the mop for cleaning.

Detective Achord obtained an arrest warrant for Thorne. He discovered that Thorne was at Meharry being treated for a gunshot wound. When Detective Achord arrived at Thorne's hospital room, he discovered Sandifer in the room. Sandifer was in possession of a PDA with the name "Lady Krush" on the screen. Detective Achord knew this to be A.B.'s nickname. Detective Achord seized the PDA. After finding a set of keys to a Lexus, he obtained a search warrant for the car.

After A.B. was taken to her car by Crenshaw and Cunningham, Sandifer and Thorne came to the parking lot and got into another car, a black Lexus. Sandifer and Thorne followed Cunningham, Crenshaw, and A.B. to Cunningham's aunt's house. When they arrived at the house, Cunningham's aunt, Denise King, looked at Thorne's injury and told him he needed to go to the hospital. She agreed to drive him to Meharry. Sandifer rode with them to the hospital. Cunningham, Crenshaw, and A.B. followed in A.B.'s car. Sandifer stayed at the hospital with Thorne. Cunningham and Crenshaw drove around with A.B. still in the backseat. They stopped for food. At some point, they returned to the hospital and Sandifer got into the car. Sandifer told A.B. that if he had had a condom, he would have raped her. A.B. asked Crenshaw and Cunningham to let her go. They told her that they would let her go later. Cunningham and Crenshaw drove to Cunningham's mother's house. They told A.B. to act like she was Crenshaw's sister. Cunningham and Crenshaw went upstairs and left A.B. downstairs with Cunningham's mother and her children.

When she returned downstairs, Crenshaw told A.B. that she wanted to go see another boyfriend and told A.B. they were going to go to the store for some tampons. A.B. and Crenshaw left in A.B.'s car. Crenshaw and the other boyfriend stood next to the car while A.B. remained inside. A.B. was planning to leave in the car if Crenshaw left the keys, but Crenshaw took the keys with her. Crenshaw and the boyfriend had an argument, and Crenshaw drove A.B. back to Cunningham's mother's house.

Crenshaw and Cunningham put A.B. back into the car. They began driving around town. At some point, R.N. called A.B.'s cellphone pretending to be Thorne in an attempt to lure them to the hospital. Crenshaw, who had A.B.'s phone at the time, answered and immediately recognized R.N.'s voice. Crenshaw told A.B., "[R.N.] done fucked you up 'cause I was gonna take you home, but now, you have to stay with us cause he's got the police up there." Cunningham was driving A.B.'s car at this point, and Crenshaw demanded that he pull the car over. When he complied, Crenshaw engaged the child locks on the rear doors of the car so that A.B. could not escape.

Crenshaw and Cunningham decided they wanted to go to a hotel room. Before doing so, they picked up Kendre Howard and Tracy Phillips. When Howard got into the car, he said he was "strapped." A.B. understood this to mean that Howard was carrying a weapon. She believed that Crenshaw and Cunningham might have picked Howard up so that Howard could kill her.

When they arrived at the hotel, A.B. was forced to go to the front desk and pay for a hotel room with her credit card. While in the hotel room, Howard asked A.B. to fellate him. She refused. Howard did not force her and let the matter drop. A chair in the hotel room was

placed in front of the door, and someone sat in the chair the entire night. A.B. was on a bed with Howard and tried to stay awake.

The next morning, Crenshaw, Cunningham, Howard, and Phillips took A.B. to the mall. While there, they demanded that A.B. give them her ATM card and her PIN number. Howard and Phillips withdrew money from A.B.'s account using her ATM card. Crenshaw took some of the money and forced A.B. to accompany her while she got her nails done. The other individuals took the money and bought clothes. While at the mall, A.B. saw a security guard. However, she was afraid to approach him because she did not know what Crenshaw, Cunningham, Howard and Phillips were willing to do to keep her quiet.

After leaving the mall, they returned to Cunningham's mother's house. When they arrived, A.B. pleaded to be let go. She had been pleading with them throughout the time she was with them. Crenshaw had been telling her maybe later. At this point, they were discussing letting her go but were concerned that she would call the police. She promised not to call. Cunningham relented and agreed to let her go. A.B. caused a scene outside the house in order to get her cellphone back from them. They returned her cellphone, and she left in her car. Once she was in the car, she called her best friend and her parents. She agreed to meet them at a Mapco near her apartment. Her parents called the police. Detective Achord was notified, and he met A.B. at the Mapco.

A.B. described the events to Detective Achord. She agreed to submit to an examination to compile a rape kit. A.B. forgot to tell the nurse that Sandifer placed the mop in her anus, so the nurse did not examine that area of A.B.'s body. The tests run on the rape kit materials did not reveal any pertinent evidence.

A.B. called Detective Achord several days later to tell him that Crenshaw and Cunningham were calling her, texting her and leaving threatening voice mail messages. A.B. also informed Detective Achord that Crenshaw and Cunningham had taken a photograph of themselves with her cellphone during the time they held her captive. On November 17, 2006, Crenshaw and Cunningham were located in a hotel room in Nashville.

In January 2007, the Davidson County Grand Jury indicted Appellants for the following crimes:

Count 1: aggravated robbery of R.N. (all Appellants)

Count 2: aggravated robbery of A.B. (all Appellants)

Count 3:    aggravated burglary of the residence of R.N. and A.B. (all Appellants)

Count 4:    aggravated rape of A.B. (Appellant Sandifer) (at trial the State elected the penetration of A.B.'s vagina by R.N.'s tongue)

Count 5:    aggravated rape of R.N. (Appellant Sandifer) (at trial the State elected the forcing of R.N. to penetrate of A.B.'s vagina with his tongue)

Count 6:    aggravated rape of A.B. (Appellant Sandifer) (at trial the State elected the penetration of A.B.'s vagina by the mop handle)

Count 7:    aggravated rape of A.B. (Appellant Sandifer) (at trial the State elected the penetration of A.B.'s anus by the mop handle)

Count 8:    aggravated rape of A.B. (Appellant Sandifer) (at trial the State elected the incident when Sandifer ordered A.B. to masturbate by inserting her own fingers in her vagina)

Count 9:    facilitation of aggravated rape (Appellants Thorne, Crenshaw, and Cunningham) (at trial the State elected a different incident for each Appellant: Thorne – A.B.'s vagina penetrated by R.N.'s tongue; Crenshaw – A.B. forced to masturbate with her own fingers; Cunningham – Sandifer penetrating A.B.'s vagina with the mop handle)

Count 10:   facilitation of aggravated rape (Thorne, Crenshaw, and Cunningham) (the State elected the forcing of R.N. to penetrate A.B.'s vagina with his tongue)

Count 11:   especially aggravated kidnapping of R.N. (all Appellants)

Count 12:   especially aggravated kidnapping of A.B. (all Appellants)

Count 14:   coercion of a witness (Appellants Crenshaw and Cunningham)


Appellants were tried jointly in August 2008. Appellants were convicted and sentenced as follows:

| | |
|---|---|
| Appellant Sandifer: | He was convicted of counts 1, 2, 3, 4, 5, 6, 8, 11, and 12 as charged. For Count 7, the jury convicted Sandifer of the lesser included offense of attempted aggravated rape. The trial court sentenced him to an effective sentence of 108 years. |
| Appellant Crenshaw: | She was convicted of Counts 2, 3, 12, and 14. For Count 1, the jury convicted her of the lesser included offense of robbery. The trial court sentenced her to an effective sentence of twenty-three years. |
| Appellant Cunningham: | He was convicted of Counts 1, 2, 3, 9, 10, 11, 12 and 14. The trial court sentenced him to an effective sentence of fifty-two years. |
| Appellant Thorne: | He was convicted of Counts 1, 2, 3, 9, 10, 11, and 12. The trial court sentenced him to an effective sentence of fifty-two years. |

All Appellants filed timely notices of appeal.

## ANALYSIS

All four Appellants bring issues before this Court on appeal. Appellant Crenshaw argues that: (1) the evidence was insufficient to support her convictions; and (2) the trial court erred in sentencing by not assigning the proper weight to mitigating factors, applying enhancement factor (10), and ordering consecutive sentences. Appellant Cunningham argues that: (1) the trial court erred in failing to grant his motion for severance from the other defendants; (2) the evidence was insufficient to support his conviction of two counts of facilitation of aggravated rape and one count of especially aggravated kidnapping (Counts 9, 10, and 11); (3) the trial court erred in sentencing by not applying a mitigating factor, applying enhancement factors (2) and (7), and ordering consecutive sentencing. Appellant Thorne argues that: (1) the trial court erred in failing to grant his motion for severance from the other defendants; (2) the trial court erred in failing to grant his motion in limine to exclude the victims from the courtroom during trial; (3) the trial court erred in failing to grant his motion to require the State to elect the facts constituting the two counts of especially

aggravated kidnapping; (4) the evidence was insufficient to support his convictions; and (5) the trial court erred in sentencing by not apply mitigating factors and by ordering consecutive sentences. Appellant Sandifer argues that: (1) the evidence was insufficient to support his convictions for especially aggravated kidnapping; (2) Counts 4, 5, 6, and 7 for aggravated rape should have been merged as a continuous act constituting a single aggravated rape; (3) it was a violation of his due process rights for the trial court to fail to merge Counts 11 and 12 with Counts 1 and 2; (4) the trial court erred in sentencing by not applying mitigating factors and in ordering consecutive sentences.

## Severance

As stated above, Appellants Cunningham and Thorne both argue that the trial court erred in denying their motions for severance. They argue that the weight of evidence against the co-defendants is "widely disparate." To support this statement, they both assert that neither of them were responsible for the rapes of A.B. and R.N. and that they did not offer assistance to Appellant Sandifer in completing the rapes. They also argue that severance is necessary in this case because each of the Appellants' defenses were antagonistic to the defenses of the other Appellants.

We first note that Rule 14(c)(2)(ii) of the Tennessee Rules of Criminal Procedure provides that the trial court "shall grant a severance of defendants . . . during trial . . . [if] it is deemed necessary to achieve a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(ii). Turning to case law, it becomes clear that the decision concerning "[w]hether to grant a severance is within the trial judge's sound discretion." *State v. Ensley*, 956 S.W.2d 502, 508 (Tenn. Crim. App. 1996). "The exercise of that discretion will not be reversed absent an affirmative showing of prejudice." *Id.* "In other words, the record must demonstrate that 'the defendant was clearly prejudiced to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty.'" *Parham v. State*, 885 S.W.2d 375, 383 (Tenn. Crim. App. 1994) (quoting *Hunter v. State*, 440 S.W.2d 1, 6 (Tenn. 1969)). The trial court, however, must not only protect the rights of the accused; it must also safeguard the rights of the State/prosecution, "'and when several persons are charged jointly with a single crime, . . . the state is entitled to have the fact of guilt determined and punishment assessed in a single trial, unless to do so would unfairly prejudice the rights of the defendants.'" *State v. Wiseman*, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982) (quoting *Woodruff v. State*, 51 S.W.2d 843, 845 (Tenn. 1932)). Our supreme court has stated the following:

"While 'mutually antagonistic' defenses may mandate severance in some circumstances, they are not prejudicial per se." *State v. Farmer, et al.*,

No. 03C01-9206-CR-00196, 1993 WL 247907 (Tenn. Crim. App. July 8, 1993) citing *Zafiro v. United States*, 506 U.S. 534, 537-38, 113 S. Ct. 933, 937, 122 L. Ed. 2d 317 (1993). Due to the difficulty in establishing prejudice, relatively few convictions have been reversed for failure to sever on these grounds. *Id.* Mere attempts to cast the blame on the other will not, standing alone, justify a severance on the grounds that the respective defenses are antagonistic. *Id.* "The defendant must go further and establish that a joint trial will result in 'compelling prejudice,' against which the trial court cannot protect, so that a fair trial cannot be had." *Id.* quoting *United States v. Horton*, 705 F.2d 1414, 1417 (5th Cir. 1983).

*Ensley*, 956 S.W.2d at 509.

We initially address Appellants' argument that they were not responsible for the rapes of A.B. and R.N. and that they did not assist Appellant Sandifer in his rapes of the victims. This argument implies that evidence of the rapes was prejudicial because such evidence would not have been presented in their trials had their motions to sever been granted. However, both Appellant Cunningham and Appellant Thorne were indicted for multiple counts of facilitation to commit aggravated rape. In addition, Appellant Thorne asserts that "he was not involved in the events that occurred in the twenty-four hours after leaving [A.B.'s and R.N.'s] apartment" because he was taken to the hospital. We can only assume that he is arguing he was also not responsible for the especially aggravated kidnapping of the victims even though he was indicted for both crimes. Whether Appellants were guilty of these crimes is a factual question that is to be determined by a jury. Therefore, these assertions are not sufficient to support the argument that the evidence presented during the joint trial is prejudicial because the evidence would have been presented by the State with regard to their charges of facilitation to commit aggravated rape and especially aggravated kidnapping.

We now turn to Appellants' argument that the defenses of all appellants at trial were antagonistic to each other. As stated above, antagonistic defenses can require a severance, however, their existence is not inherently prejudicial to defendants who are being tried jointly. *Id.* Appellant Cunningham argues that the strategy of each Appellant was to minimize their participation in the crimes and place the blame on the other Appellants. However, our supreme court has previously stated that the mere assertion that the defense was to cast blame on the co-defendants is not sufficient on its own to prove prejudice. *Id.* An appellant must prove that the prejudice is so evident that the trial court cannot protect the defendant and, therefore, a fair trial is not possible. *Id.*

Appellants have not shown how they have been prejudiced other than to assert that they did not participate in certain crimes, which is a factual issue for the jury, and to assert that their defenses are antagonistic to each other. Having reviewed the record, we conclude that prejudice, to the extent that the Appellants did not receive a fair trial, was not present at Appellants' trial. According to the victims, Appellants were all present throughout the time that the robbery, rapes, and the restraining and beating of R.N. were occurring at the victims' apartment. When A.B. was initially taken from the apartment, she testified to seeing all four Appellants either in the car with her or at the residence where she was initially taken. Therefore, we conclude that the trial court did not abuse its discretion in denying Appellants' motions for severance.

This issue is without merit.

## Motion in Limine

Appellant Thorne argues that the trial court erred in denying his motion in limine to exclude A.B. and R.N. from the trial. He bases this argument on Rule 615 of the Tennessee Rules of Evidence and various case law that prevents one witness from hearing the testimony of another witness. He argues that his rights to due process and a fair trial were violated.

Rule 615 of the Tennessee Rules of Evidence states, in pertinent part, that "[a]t the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing." Trial judges have always been afforded wide discretion in determining whether to impose the sanction of excluding the evidence of the witness suspected of having violated the rule. *State v. Moffett*, 729 S.W.2d 679, 681 (Tenn. Crim. App. 1986); *see also State v. Anthony*, 836 S.W.2d 600, 604-05 (Tenn. Crim. App. 1992).

In *State v. Elkins*, 83 S.W.3d 706, 713 (Tenn. 2002), our supreme court declined to specifically address this issue because the case was determined on other grounds. However, the court noted the following regarding the sequestration rule:

> Rule 615 does not mandate exclusion of all persons and permits counsel for a party that is not a natural person to designate a person to remain in the courtroom. The 1997 Advisory Commission Comments to Rule 615 specifically explain that this provision permits the prosecuting attorney for the State of Tennessee to designate a crime victim as the person to remain in the courtroom despite invocation of the rule of sequestration. Therefore, on remand if the prosecution so desires, it may designate [the victim] as a person to remain in the courtroom even if the defense again invokes Rule 615. We

decline to address the State's assertion that Article I, Section 35 of the Tennessee Constitution supersedes the rule of sequestration as it relates to victims of crime. It is well-settled that courts generally do not decide constitutional issues if the case may be properly resolved on nonconstitutional grounds. *See, State v. Hicks*, 55 S.W.3d 515 (Tenn. 2001); *State v. Burdin*, 924 S.W.2d 82, 87 (Tenn. 1996); *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*Elkins*, 83 S.W.3d at 713.

In the case at hand, the trial court conducted a short hearing on Appellant Thorne's motion in limine to exclude the victims under the sequestration rule. At that hearing, the State strenuously argued that A.B. and R.N. should be allowed to remain in the courtroom during the trial because they were the victims of the crimes in question. We conclude that this is tantamount to designating A.B. and R.N. as individuals to remain in the courtroom. As set out by our supreme court, the State may designate the victims to remain in the courtroom regardless of the defendant's invocation of the rule.

In addition, even if the trial court erred in denying Appellant Thorne's motion, violations of "the Rule" are subject to harmless error analysis. *State v. Wicks*, 729 S.W.2d 283, 285 (Tenn. Crim. App. 1987). In this case, A.B. had testified many times at several different hearings. Appellant Thorne, as well as the other appellants, were either present at the other proceedings or had access to her testimony. Therefore, any inconsistencies could have been brought out on cross-examination. At the hearing, it was noted that R.N. had not testified in as many proceedings. However, the State told the trial court that it was planning to present R.N. as a witness before A.B. Therefore, R.N. would not hear A.B.'s testimony before he himself testified. This is indeed what happened at trial. R.N. was the State's first witness. Appellant Thorne has been unable to show how the presence of the two victims prejudiced his case. Therefore, even if it was error on the part of the trial court, the error was harmless.

This issue is without merit.

## Motion for State to Elect Facts

Appellant Thorne also argues that the trial court erred in denying his motion to require the State to elect the facts upon which it was relying for the two counts of especially aggravated kidnapping. The State argues that the trial court did not err.

-12-

We conclude that the trial court did not err in denying Appellant Thorne's motion. In *State v. Adams*, 24, S.W.3d 289 (Tenn. 2000), our supreme court determined that the State is not required to make an election of offenses when the crime at issue is considered a single, continuous course of conduct. 24 S.W.3d at 294-95. Previous to *Adams*, our supreme court held that kidnapping is a continuous course of conduct. *State v. Legg*, 9 S.W.3d 111, 118 (Tenn. 1999). Therefore, the State is not required to make an election of offenses in the case at hand.

This issue is without merit.

## Sufficiency

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

## Appellant Crenshaw

Appellant Crenshaw argues generally that the evidence was insufficient to support her convictions. Her argument consists of the following statement, "there was no evidence of preplanning on the part of Appellant. The fact that the jury acquitted her of the rape charges

shows minimal participation and a decreased amount of criminal responsibility in the situation overall." The State argues that the evidence was sufficient.

The jury convicted Appellant Crenshaw of robbery of R.N., aggravated robbery of A.B., aggravated burglary of the residence of R.N. and A.B., especially aggravated kidnapping of A.B., and coercion of a witness. None of these crimes requires "preplanning" as an element. Therefore, the fact that Appellant may not have been involved in the preplanning does not prevent her guilt of the charges.

When the evidence is taken in a light more favorable to the State, it demonstrates that Appellant Crenshaw arrived at the victims' apartment with Appellant Thorne. She was in the apartment when Appellants Cunningham and Sandifer forced their way into the apartment. Once all four Appellants were in the apartment, Appellant Crenshaw was carrying recording equipment and other belongings of the victims out of the apartment. She also pointed a gun at A.B.'s head and demanded A.B.'s and R.N.'s cars while A.B. was being raped. After the rapes were concluded, Appellant Crenshaw forced A.B. to leave the apartment at gunpoint. Appellant Crenshaw then held A.B. captive for over twenty-four hours while forcing A.B. to pay for a hotel room and get money out of her bank account for Appellant Crenshaw and her friends to go on a shopping spree. After letting A.B. go, Appellant Crenshaw left several voicemail messages threatening A.B. regarding law enforcement's investigation into the events in question. These facts are more than sufficient to support the jury's verdicts with regard to Appellant Crenshaw's convictions.

Therefore, this issue is without merit.

<u>Appellants Sandifer, Cunningham, and Thorne – Especially Aggravated Kidnapping</u>

Appellants Sandifer, Thorne and Cunningham argue that the evidence was insufficient to support their convictions for especially aggravated kidnapping of R.N. and especially aggravated kidnapping of A.B. Their arguments against the sufficiency of the evidence consist of statements that the kidnappings were an integral part of the robberies, in the case of all three Appellants, and rapes of the victims, only with regard to Appellant Sandifer, and, therefore, the especially aggravated kidnapping convictions are not a separate crime from the robberies and rapes. They argue that the especially aggravated kidnapping convictions should be merged into their other convictions pursuant to *State v. Anthony*, 817 S.W.2d 229 (Tenn. 1991). This argument is actually a due process argument. Appellant Sandifer has raised this same issue and argument as a due process argument. We will address this argument below as a due process argument.

However, all three appellants have failed to present a separate argument as to how the evidence was insufficient and in what way the State failed to prove the statutory elements necessary to support their convictions for especially aggravated kidnapping. Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257 (Tenn. Crim. App. 1992). Appellants Sandifer, Cunningham, and Thorne have failed to present an argument as to how the evidence was insufficient to support their convictions for especially aggravated kidnapping, therefore their sufficiency arguments in this regard are waived.

### Appellant Cunningham and Thorne – Facilitation of Aggravated Rape

Appellants Cunningham and Thorne both argue that the evidence was insufficient to support their convictions of facilitation of aggravated rape. Both Appellants argue that they cannot be guilty of this offense because they did not know that Appellant Sandifer intended to rape the victims. Appellants were charged pursuant to Tennessee Code Annotated section 39-11-403(a) which states, "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403(a).

Appellants are correct in their assertion that there was no evidence presented that they knew of any intent Appellant Sandifer had to rape the victims before entering the apartment. However, knowing his intent before the crime began is not required. In *State v. Grills*, 114 S.W.3d 548 (Tenn. Crim. App. 2001), *perm. app. denied*, (Tenn. 2002), the defendant was convicted of facilitation of felony rape of a child less than 13 years of age. 114 S.W.3d at 549. On appeal, she argued that the evidence was insufficient to support her conviction. *Id.* at 550. The evidence presented at trial showed that while her adult boyfriend was raping her son, the defendant walked into the victim's room and walked out and shut the door. This Court held that this was sufficient evidence to meet the elements of Tennessee Code Annotated section 39-11-403(a). *Id.* at 551.

The evidence when taken in a light more favorable to the State demonstrates that both Appellants were present in the apartment when Appellant Sandifer ordered A.B. to get undressed. In addition, there was specific testimony that Appellant Thorne was holding a gun to R.N. while R.N. was sitting on the couch immediately before R.N. was forced to

penetrate A.B.'s vagina with his tongue. The evidence also showed that Cunningham and Thorne were present throughout the rapes. A.B. heard them laugh and joke about the incidents. Based on this evidence, a rational trier of fact could conclude that Appellants Thorne and Cunningham knew Appellant Sandifer intended to rape A.B. when he ordered her to disrobe. They definitely knew that he intended to rape both victims when he ordered R.N. to perform cunnilingus on A.B. As in *Grills*, Appellants were present when the rapes occurred and did nothing to prevent them. A rational trier of fact could have also found that they provided substantial assistance by Appellant Thorne's holding the gun to R.N. while he performed cunnilingus and the fact that both Appellants were walking through the room and passing the guns to each other throughout the episode.

Therefore, we conclude that the evidence was sufficient to support their convictions of facilitation of aggravated rape.

In addition, we note that Appellants also argue that the trial court erred in failing to instruct on the natural and probable consequences rule. However, that instruction is not required for prosecution of facilitation of a felony found at Tennessee Code Annotated section 39-11-403. It is instead required when a defendant is prosecuted under the theory of criminal responsibility found at Tennessee Code Annotated section 39-11-402. *See State v. Richmond*, 90 S.W.3d 648, 654-57 (Tenn. 2002); *State v. Howard*, 30 S.W.3d 271, 276 (Tenn. 2000).

These issues are without merit.

### Failure to Merge Counts 11 and 12 with Counts 1 and 2

Appellants Sandifer and Thorne argue that the trial court erred in failing to merge Counts 11 and 12 for the especially aggravated kidnapping of R.N. and the especially aggravated kidnapping of A.B. with Counts 1 and 2 for the aggravated robbery of R.N. and the aggravated robbery of A.B. Appellant Cunningham makes the same argument in regard to Counts 11 and Count 1, the especially aggravated kidnapping of R.N. and the aggravated robbery of R.N. They argue that the restraint of the victims was not beyond that necessary to complete the robberies and, therefore, their rights to due process have been violated as stated in *Anthony*.

In *Anthony*, our supreme court addressed the issue of whether dual convictions for armed robbery and aggravated kidnapping violated the due process guarantees of Article I, section 8 of the Tennessee Constitution. The court concluded that when a confinement, movement, or detention is "essentially incidental" to an accompanying felony, such as robbery or rape, it is not sufficient to support a separate conviction for kidnapping. *Anthony*,

-16-

817 S.W.2d at 306. The court warned that the kidnapping statute should be narrowly construed "so as to make its reach fundamentally fair and to protect the due process rights of every citizen . . . ." *Id.* In other words, before a defendant may be convicted of a kidnapping charge, the trial court must determine "whether the confinement, movement, or detention [involved in the individual's case] is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." *Id.* "[O]ne method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the [attending] crime . . . itself.'" *Id.* (quoting *State v. Rollins*, 605 S.W.2d 828, 830 (Tenn. Crim. App. 1980)).

In *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997), the supreme court further refined the approach to be taken when analyzing these issues. *See* 957 S.W.2d at 535. The reviewing court must ascertain "whether the movement or confinement was beyond that necessary to consummate the act of" the accompanying offense. *Id.* "If so, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id.* The *Dixon* court clearly stated that the intent is not to provide a defendant with "a free kidnapping merely because he [or she] also committed" the primary offense, but rather merely to "prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of" the accompanying crime. *Id.* at 534.

Most recently, in *State v. Richardson*, 251 S.W.3d 438 (Tenn. 2008), our supreme court clarified the process for determining whether dual convictions for kidnapping and an accompanying offense violate due process. In *Richardson*, the court noted that the two-part test pronounced in *Dixon* "fully replaces" the "essentially incidental" analysis that was espoused in *Anthony*. *Richardson*, 251 S.W.3d at 443. The court made clear that the *Anthony* analysis "should not be used in conjunction with the *Dixon* two-part test" and that the *Dixon* test is the exclusive test for "all future inquiries." *Id.*

### Appellants Sandifer, Thorne, and Cunningham – Counts 11 & 1

The evidence at trial showed that after the rapes of R.N. and A.B. and the majority of the victim's belongings had been taken out of the apartment, A.B. was taken to a bedroom to change clothes. When she returned, R.N. was tied to a chair by electrical cord. A.B. witnessed Appellants Sandifer, Cunningham, and Crenshaw beating R.N. Appellant Crenshaw also forced A.B. to strike R.N. R.N. overheard Appellants Sandifer and Thorne

-17-

arguing about whether to kill him before they left the apartment. R.N. was able to work his way out of the restraints and escaped out the back door of the apartment.

As stated above, the initial question in this scenario is whether the "confinement was beyond that necessary to consummate" the aggravated robbery of R.N. *See Dixon*, 957 S.W.2d at 535. At the point R.N. was restrained, he had already been forced to unhook the recording equipment and the majority of the equipment had already been removed from the apartment. He was restrained as Appellants were preparing to leave. We conclude that the aggravated robbery was at least substantially completed if not totally completed. It appears that the primary reason for restraining R.N. was to beat him. Therefore, the confinement was beyond that necessary to complete the aggravated robbery.

We now turn to the second part of the test, whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *See id.* The victim's restraint prevented his summoning help. If he had not been able to escape his restraints, he would not have been able to run to his neighbors. The victim's restraint also created an increased risk of harm. After tying up the victim, Appellants were beating him. R.N. testified that the beating was so severe he passed out. In addition, Appellants Sandifer and Thorne were also considering killing R.N. while he was restrained. R.N. escaped this fate by getting out of his restraints. For these reasons, we conclude that the facts with regard to R.N. meet the two-part test set out in *Dixon*. Therefore, we find no violation of the due process rights of Appellants Sandifer, Thorne, and Cunningham as a result of the trial court's failure to merge Count 11 into Count 1.

### Appellants Sandifer and Thorne – Counts 12 and 2
### Appellant Sandifer – Counts 12 and 4, 6, 7, and 8

Initially, we point out that in addition to Count 2, Appellant Sandifer includes argument in his brief regarding the rape of A.B., Counts 4, 6, 7 and 8, even though he makes no specific reference to the charges by number. Therefore, we will address his *Anthony* argument with regard to the rapes and robbery of A.B. Appellant Thorne only presents argument regarding the merger of Counts 12 and 2.

The evidence at trial showed that after the rapes were completed and the majority of A.B.'s belongings had been removed from the apartment, Appellant Crenshaw took A.B. to get dressed. When Appellant Crenshaw and A.B. returned from the bedroom, Appellant Crenshaw, who was holding a gun, stated that A.B. was coming with them. They got into A.B.'s car with Appellant Cunningham. Appellants Sandifer and Thorne followed them in another car. A.B. was taken to a house where all four appellants were present with her in the

house. Appellant Thorne was taken to the hospital to have his foot examined. After Appellant Thorne was taken to the hospital, Appellants Crenshaw and Cunningham picked up Appellant Sandifer. Appellant Sandifer got into the car with A.B. and told her that if he had had a condom he would have raped her.

As we concluded above, at the time A.B. was taken from the apartment, the rapes had been completed and the robbery was at least substantially complete if not totally complete. Therefore, we find no violation of Appellants' right to due process as a result of the trial court's failure to merge Count 12 into Counts 2, 4, 6, 7, and 8 for Appellant Sandifer or Count 12 into Count 2 for Appellant Cunningham.

This issue is without merit.

## Failure to Merge Counts 4, 5, 7, and 8

Appellant Sandifer argues that the trial court erred in failing to merge counts 4, 5, 7, and 8 which are the basis for his convictions for three counts of aggravated rape and one count of attempted aggravated rape. The State disagrees.

This issue was not raised in the trial court, however, Appellant argues on appeal that the trial court's failure to merge his rape convictions constitutes plain error. In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting this Court's plain error test set forth in *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)); *see also* Tenn. R. Crim. P. 36(b).

With regard to the situation at hand, we must determine whether Appellant Sandifer is entitled to plain error review because a clear and unequivocal rule of law has been breached or one of his substantial rights has been breached. The remaining elements set out to determine plain error review are not at issue in this factual situation.

In order to determine whether multiple convictions arising out of a single criminal episode are permitted, this Court must: (1) conduct an analysis of the statutory offenses pursuant to *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932); (2) analyze the evidence used to prove the offenses; (3) consider whether there were multiple victims or discrete acts; and (4) compare the purposes of the respective statutes. *State v. Denton*, 938 S.W.2d 373, 381 (Tenn. 1996).

We begin with the *Blockburger* inquiry, to determine whether the offenses at issue constitute the "same offense" under the double jeopardy clause. Multiple convictions do not violate double jeopardy if "[t]he statutory elements of the two offenses are different, and neither offense is included in the other." *State v. Black*, 524 S.W.2d 913, 920 (Tenn. 1975) (citing *Iannelli v. United States*, 420 U.S. 770, 95 S. Ct. 1284 (1975)). Specifically, we must examine the offenses to "ascertain 'whether each [statutory] provision requires proof of a fact which the other does not.'" *Iannelli*, 420 U.S. at 786 n.17 (quoting *Blockburger*, 284 U.S. at 304).

Three of the four counts are aggravated rape and the fourth is attempted aggravated rape. There is no question that the charges would be considered the same offense under *Blockberger*. Likewise, the evidence necessary to prove the offenses is the same. We also conclude that there is no need to compare the purpose of the statute in question because this factual scenario involves one statute and a lesser included offense. Therefore, we are left with the third element, whether there were multiple victims or discrete acts.

The convictions at issue are Count 4, aggravated rape of A.B. by penetration of R.N.'s tongue; Count 5, aggravated rape of R.N. by penetration of A.B.'s vagina by R.N.'s tongue; Count 7, attempted aggravated rape by penetration of A.B.'s anus by the mop handle; and Count 8, aggravated rape by penetration of A.B.'s vagina by A.B.'s fingers.

As for Count 5, there is clearly no due process or double jeopardy issue due to the trial court's failure to merge the convictions. The victim in count 5 is R.N. The victim of the other three counts is A.B. The fact that the victim is a different person precludes any constitutional concerns. *See State v. Denton*, 938 S.W.2d 373, 381 (Tenn. 1996); *State v. Irvin*, 603 S.W.2d 121, 122 (Tenn. 1980).

We now turn to the question of whether the incidents supporting Counts 4, 7, and 8 constitute discrete acts or one continuous assault. Appellant relies upon the following language from *State v. Barney*, 986 S.W.2d 545 (Tenn. 1999) to support his argument:

> For determining whether two or more sexual acts may be the subject of separate convictions, we find the test articulated in *People v. Madera*, 231 Cal.App.3d 845, 282 Cal.Rptr. 674 (1991), to be instructive. In *Madera*, the court upheld dual convictions for a defendant who rubbed a young boy's penis and then engaged in fellatio. The defendant contended that the touching was merely incidental and preparatory to the commission of the fellatio and argued that the rubbing was a part of the fellatio. The court reasoned that Madera's intent was the critical consideration. Specifically, the pivotal question was

"whether [Madera's] touching of [the victim's] penis was to commit a separate base criminal act or to facilitate the oral copulations . . . that shortly followed." *Id.* at 679. The court held that if the act in question directly facilitates or is merely incidental to the accompanying sexual conduct (such as, for example, applying lubricant to the area of intended copulation), convictions for both acts would be barred. *Id.* at 680. If, however, the act in question is "preparatory" only in the sense that it is intended to sexually arouse either the victim or the perpetrator, separate convictions are not barred. *Id.*; *accord People v. Scott*, 9 Cal.4th 331, 36 Cal.Rptr.2d 627, 885 P.2d 1040 (Cal. 1994).

We suggest that several factors may be relevant in determining whether conduct is directly facilitative, and thus incidental, or merely preparatory in the sense of intending to arouse the victim or perpetrator. These factors are:

> 1. temporal proximity-the greater the interval between the acts, the more likely the acts are separate;
>
> 2. spatial proximity-movement or re-positioning tends to suggest separate acts;
>
> 3. occurrence of an intervening event-an interruption tends to suggest separate acts;
>
> 4. sequence of the acts-serial penetration of different orifices as distinguished from repeated penetrations of the same orifice tends to suggest separate offenses; and
>
> 5. the defendant's intent as evidenced by conduct and statements.

986 S.W.2d at 548-49 (footnote omitted). Appellant Sandifer argues that the acts constituted one single assault, there were no breaks in time where the assault stopped and then began again, the acts all occurred in the living room on the couch, and A.B. was repositioned but there were no intervening events or interruptions between the penetrations. Appellant also argues that there was no penetration of A.B.'s anus, and it was only an attempt. Appellant argues that under *Barney*, the acts in question constitute a single continuous offense due to the temporal proximity, spatial proximity, lack of intervening event, and lack of different orifices.

We disagree with Appellant Sandifer's contentions. Although all of the charges arose from one course of conduct, discrete acts support each of the charges. *See Duchac v. State*, 505 S.W.2d 237, 240 (Tenn. 1973). Initially, we note that *Barney*, which is cited by Appellant, states that "serial penetration of different orifices as distinguished from repeated penetrations of the same orifice tends to suggest separate offenses." *See* 986 S.W.2d at548-49. In Count 7, the orifice penetrated was A.B.'s anus while Counts 4 and 8 concern penetrations of A.B.'s vagina.

Likewise, this Court has held that the penetration of the same orifice by different body parts or objects also leads to a conclusion that the discrete acts constitute separate offenses. In *State v. Randall Ray Mills*, No. M2000-01065-CCA-R3-CD, 2001 WL 1246387 (Tenn. Crim. App., at Nashville, Oct. 17, 2001), *perm. app. denied*, (Tenn. Mar. 4, 2002), the defendant was convicted of one count of rape of a child and three counts of aggravated sexual battery. 2001 WL 1246387, at *3. At the sentencing hearing, the trial court merged the aggravated sexual battery convictions into the conviction for rape of a child. *Id.* On appeal, the State argued that the trial court erred in merging the convictions. *Id.* at *1. The defendant was convicted of aggravated sexual battery based upon the digital penetration of the child's vagina. In addition, he was convicted of rape of a child for penile penetration of her vagina. *Id.* at * 3. The trial court merged this sexual battery conviction based upon digital penetration into the rape of a child conviction based upon the penile penetration. *Id.* On appeal, this Court held that the trial court improperly merged these convictions. *Id.* at *7. Our Court stated that the defendant, "formed a new intent to violate the victim and did so by differing forms of penetration." *Id.* In addition, this Court quoted an opinion from our supreme court and stated "'each of the above-described acts is . . . a discrete type of sexual penetration . . . requir[ing] a purposeful act on the part of the perpetrator.'" *Id.* at *7 (quoting *State v. Phillips*, 924 S.W.2d 662, 664-65 (Tenn. 1996)). Based upon these cases, we conclude that the differing objects used by Appellant Sandifer to penetrate A.B.'s vagina and anus support the trial court's failure to merge Appellant's aggravated rape and attempted aggravated rape convictions. Each separate penetration is a discrete type of penetration and required a "purposeful act on the part of" Appellant.

For the above-stated reasons, we find that the failure to merge these convictions has not violated Appellant's right to due process or his right against double jeopardy. Therefore, Appellant has not proven that a clear and unequivocal rule of law has been breached or that one of his substantial rights have been breached. The trial court's failure to merge the above convictions does not constitute plain error.

Therefore, this issue is without merit.

**Sentencing**

"When reviewing sentencing issues . . ., the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses, (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

When imposing the sentence within the appropriate sentencing range for the defendant:

[T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (emphasis added). However, the weight given by the trial court to the mitigating and enhancement factors are left to the trial court's discretion and are not a basis for reversal by an appellate court of an imposed sentence. *Carter*, 254 S.W.3d at 345. "An appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

"The amended statute no longer imposes a presumptive sentence." *Id.* at 343. As a result of the amendments to the Sentencing Act, our appellate review of the weighing of the enhancement and mitigating factors was deleted when the factors became advisory, as opposed to binding, upon the trial court's sentencing decision. *Id.* at 344. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id.* The trial court's weighing of various mitigating and enhancement factors is now left to the trial court's sound discretion. *Id.*

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See id.* at 343; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). If our review reflects that "the trial court appl[ied] inappropriate mitigating and/or enhancement factors or otherwise fail[ed] to follow the Sentencing Act, the presumption of correctness fails" and our review is de novo. *Carter*, 254 S.W.3d at 345.

<u>Appellant Crenshaw</u>

Appellant Crenshaw argues that the trial court erred in sentencing her to an effective sentence of twenty-three years. She argues that the trial court erred in determining the length of her sentences: (1) refusing to place any weight on three mitigating factors – that she played a minor role in the offense, that she voluntarily released the victims alive, and that she acted under duress; (2) giving insufficient weight to the mitigating factors that her youth and mental condition caused her to lack substantial judgment; and (3) applying enhancement factor (10), "the defendant had no hesitation about committing a crime when the risk to human life was high." *See* T.C.A. § 40-35-114(10).

-24-

As stated above, the weight given by the trial court to the mitigating and enhancement factors are not a basis for reversal. *See Carter*, 254 S.W.3d at 345. Therefore, Appellant Crenshaw's arguments regarding the weight given to the mitigating factors must fail. As stated previously, the mitigating factors are merely advisory. We are without authority to adjust a defendant's sentence because of "a trial court's 'fail[ure] to appropriately adjust' a sentence in light of applicable, but merely advisory, mitigating or enhancement factors." *Carter*, 254 S.W.3d at 346.

Appellant Crenshaw also argues that the trial court erred in applying enhancement factor (10) to her sentence. *See* T.C.A. § 40-35-114(10). She argues that enhancement factor (10) is not applicable because the factor applies when the risk to human life is to an individual other than the victim. The trial court applied the enhancement factor in question for the following reasons, "The defendant participated in violent offenses including holding a weapon on victim [A.B.] while the victim was unclothed and being subject to forced sexual acts. The defendant struck [R.N.] with her fists while he was detained."

Appellant is correct in her assertion. In general, factor (10) applies only where the facts that establish that the defendant created a high risk to human life also demonstrate a greater culpability than that incident to the offense underlying the enhancement. *State v. Jones*, 883 S.W.2d 597, 601 (Tenn. 1994). As a result, where a high risk to human life is inherent in the underlying conviction, enhancement factor (10) applies only if the defendant disregarded a high risk to the life of a person other than the victim. *State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997).

However, this Court has held that the risk to human life may also include the risk to the life of a co-defendant. *See State v. Richard Ellis Stapleton*, E2008-01776-CCA-R3-CD, 2009 WL 3754371, at *6 (Tenn. Crim. App., at Knoxville, Nov. 10, 2009). The facts showed that Appellant Crenshaw was in possession of a firearm at the victims' apartment. We conclude that this fact constituted a risk to the lives of her three co-defendants because they were all present in the apartment.

We have reviewed Appellant's assertions and conclude that her arguments against the trial court's application of mitigating factors and enhancement factors are meritless. As stated above, the weight given the mitigating and enhancement factors are not a basis for reversal. *See Carter*, 254 S.W.3d at 345. Therefore, we find no basis upon which to reverse the length sentences imposed for each conviction by the trial court.

## Appellant Sandifer

Appellant Sandifer argues that the trial court erred in not applying two requested mitigating factors: factor (8), the defendant was suffering from a mental condition that reduced his culpability, and factor (13), based upon the fact that Appellant had "an exceedingly troubled childhood." T.C.A. § 40-35-113(8), (13). The trial court declined to apply any mitigating factors when sentencing Appellant.

The trial court has followed the sentencing principles, therefore, there is a presumption of correctness with regard to the sentence imposed. As stated above, the mitigating and enhancement factors are advisory. We cannot adjust a defendant's sentence because of "a trial court's 'fail[ure] to appropriately adjust' a sentence in light of applicable, but merely advisory, mitigating or enhancement factors." *Carter*, 254 S.W.3d at 346. Therefore, there is no basis upon which to adjust Appellant's sentence.

This issue is without merit.

## Appellant Thorne

Appellant Thorne argues that the trial court erred in failing to apply certain mitigating factors at sentencing. He argues that the trial court should have applied mitigating factor (6), the defendant lacked judgment because of youth and factor, and factor (8), the defendant was suffering from a mental condition that reduced his culpability. *See* T.C.A. § 40-35-113(6), (8). The trial court applied mitigating factor (13) based upon the fact that Appellant provided an allocution to the trial court. This mitigating factor was given minimal weight.

The trial court has followed the sentencing principles, therefore, there is a presumption of correctness with regard to the sentence imposed. As stated above, the mitigating and enhancement factors are advisory. We cannot adjust a defendant's sentence because of "a trial court's 'fail[ure] to appropriately adjust' a sentence in light of applicable, but merely advisory, mitigating or enhancement factors." *Carter*, 254 S.W.3d at 346. Therefore, there is no basis upon which to adjust Appellant's sentence.

Appellant Thorne also argues that the trial court erred in applying enhancement factors (2), the defendant was a leader in the commission of the offense, and (9), the defendant possessed or employed a firearm during the commission of the offense. *See* T.C.A. § 40-35-113(2), (9). Appellant argument on this point consists of the following statement, "Finally, the court indicates in the Sentencing Order that enhancement factors number two and nine are applicable because 'Appellant admitted to possessing a weapon

during much of these incidents.' The testimony at trial simply does not support the trial court's findings."

At trial, he testified that he was the individual who knew R.N. from various music dealings. He met with the other defendants prior to going over to R.N.'s apartment the morning in question. His stated intent was to go to R.N.'s apartment and take his drugs and gun. Appellant admitted that the idea to rob R.N. was initially his idea. Therefore, there was adequate evidence to support the imposition of enhancement factor (2). With regard to the possession of a weapon, even if Appellant did not admit "to possessing a weapon during much of these incidents" there was adequate testimony from both R.N. and A.B. to support this enhancement factor. In addition, there is no dispute that Appellant handled a weapon while at the apartment when he shot himself in the foot.

This issue is without merit.

Appellant Cunningham

Appellant Cunningham argues that the trial court erred in failing to apply mitigating factors (6), the defendant lacked substantial judgment because of youth, (11), the defendant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct, and (13) based upon the fact that A.B. had numerous opportunities to escape but chose to remain with her captors. *See* T.C.A. § 40-35-114(6), (11), (12).

The trial court has followed the sentencing principles, therefore, there is a presumption of correctness with regard to the sentence imposed. As stated above, the mitigating and enhancement factors are advisory. We cannot adjust a defendant's sentence because of "a trial court's 'fail[ure] to appropriately adjust' a sentence in light of applicable, but merely advisory, mitigating or enhancement factors." *Carter*, 254 S.W.3d at 346. Therefore, there is no basis upon which to adjust Appellant's sentence.

Appellant also argues that the trial court erred in applying enhancement factors (2), the defendant was a leader in the commission of the offense, and (7), the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. *See* T.C.A. § 40-35-114(2), (7). Appellant argues that Appellant Thorne was the leader with regard to the robbery and the burglary because he knew R.N. and A.B. We agree with this statement. However, the trial court specifically stated that it was applying enhancement factor (2) to counts eleven and twelve, regarding the especially aggravated kidnappings of R.N. and A.B. The trial court cited the fact that the evidence demonstrated that Appellant Cunningham tied R.N. to the chair. There is no question that the evidence also showed the

-27-

Appellant Cunningham was a leader with regard to the kidnapping of A.B. after the incidents at the apartment. He drove A.B.'s car and refused to let A.B. go when she requested to be let go.

With regard to enhancement factor (7), Appellant argues that the evidence did not support the application of this enhancement factor because Appellant Cunningham was rarely in the room while A.B. was being raped. The evidence leads to a different conclusion. However, the trial court based this enhancement factor on the fact that Appellant was laughing and present during the rapes. We agree with Appellant that this is insufficient evidence to support the application of this enhancement factor. We are not convinced that this demonstrates that he committed the acts to gratify his desire for pleasure or excitement. Therefore, we conclude that this enhancement factor was inappropriately applied.

However, the trial court applied three other enhancement factors. Appellant was sentenced to the midrange for each conviction, except coercion of a witness for which he was sentenced to the maximum sentence of four years. We conclude that these three enhancement factors support the imposition of the length of Appellant's sentences within the statutory range.

This issue is without merit.

## Consecutive Sentencing

All four Appellants argue that the trial court erred in imposing consecutive sentences. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

-28-

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b).  When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense.  *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).  The imposition of consecutive sentencing is in the discretion of the trial court.  *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

In the cases at hand, the trial court based the imposition of consecutive sentences on its determination that Appellants are dangerous offenders.  If the trial court rests its determination of consecutive sentencing on the basis of a defendant's status as a "dangerous offender," the court must make two additional findings, as required by *State v. Wilkerson*, 905 S.W.2d 905 (Tenn. 1995).  *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).  First, the trial court must find that an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably-related to the severity of the offenses.  *Wilkerson*, 905 S.W.2d at 939.

For each Appellant, the trial court stated the following:

Furthermore, pursuant to T.C.A. § 40-35-115, the Court finds this defendant to be a dangerous offender whose behavior indicates little or no regard for human life, and had no hesitation about committing a crime in which the risk to human life is high.  In addition, the Court finds based on the totality of the

-29-

circumstances, the aggregate sentence imposed is necessary to protect the public. *See State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995).

The trial court made additional findings with regard to each Appellant. For Appellant Crenshaw, the trial court additionally found, "The defendant threatened the victim after the commission of these offenses." For Appellant Cunningham, the trial court additionally found:

> During the episode, the defendant actually held and employed a deadly weapon and participated in tying up [R.N.] and hit him about the face. During the sexual assaults, the defendant was present and expressing his impression of the events by laughing. The defendant threatened the victim after the commission of these offenses.

For Appellant Thorne, the trial court additionally found, "The defendant possessed a handgun and held it on victim [A.B.] and pointed it at victim [R.N.]. He was also present when the horrendous acts were perpetrated upon victim [A.B.]." For Appellant Sandifer, the trial court additionally found, "The defendant attempted to hire a jailed associate to kill the victims, ninety days prior to trial by giving information as to how and when to commit the murders. In addition, the facts established at trial qualify the defendant for consecutive sentences."

Appellants argue that the trial court's findings are insufficient to meet the requirements set out in *Wilkerson*. We agree that the trial court's findings are lacking in sufficient factual findings specific to each Appellant. However, this Court may uphold consecutive sentencing if we are able to make the *Wilkerson* determinations from the record on appeal. *See State v. Brian Milam*, No. M2008-00695-CCA-R3-CD, 2010 WL 744398, at *25 (Tenn. Crim. App., at Nashville, Mar. 3, 2010), *perm. app. denied*, (Tenn. Aug. 26, 2010); *State v. Daronopolis R. Sweatt*, No. M1999-2522-CCA-R3-CD, 2000 WL 1649502, at *9-10 (Tenn. Crim. App., at Jackson, Nov. 3, 2000).

The facts at trial showed that Appellants planned at the very least to join together to rob R.N. of any drugs and guns in his possession at his apartment. Appellants Thorne and Crenshaw, by way of subterfuge, gained entry into R.N.'s apartment. Appellants Thorne and Crenshaw subsequently allowed Appellants Cunningham and Sandifer into R.N.'s apartment. Appellants Cunningham and Sandifer entered the victims' apartment brandishing weapons. Appellants were swapping the weapons amongst each other throughout the episodes in question. Appellant Thorne pointed a gun at R.N. and later brought A.B. into the living room

at gunpoint. When she arrived in the living room, Appellant Sandifer forced A.B. to undress at gunpoint. While the other three Appellants were either in the room watching and laughing or walking through the room carrying stolen items, Appellant Sandifer proceeded to choreograph multiple rapes of A.B. While R.N. was held on the couch at gunpoint by Appellant Thorne, Appellant Sandifer forced R.N. to perform cunnilingus on A.B. He also ordered R.N. to digitally penetrate A.B. Appellant Crenshaw smirked while A.B. was being raped and said, "Damn, you guys have her naked." Appellant Crenshaw also pointed a gun at A.B.'s head while she was being raped and demanded both her car and R.N.'s car. After the rapes, R.N. was tied to a chair and repeatedly beaten by Appellants Sandifer, Cunningham, and Crenshaw until he lost consciousness. Appellant Crenshaw also forced A.B. to strike R.N. R.N. was able to work his way out of his restraints and upon escaping, one of the appellants shot at him. Appellants Crenshaw and Cunningham took A.B. to a second location while Appellants Thorne and Sandifer followed in a separate car. Appellant Sandifer later told A.B. that she was lucky he could not find a condom because he would have raped her again. Appellants Crenshaw and Cunningham then proceeded to keep A.B. against her will for over twenty-four hours while they threatened her and stole from her. After they were captured, they continued their abuse of A.B. by leaving threatening messages on her voicemail.

This Court is shocked at the cruelty displayed by Appellants and the conscious disregard for the safety and well-being of other human beings evinced by their actions. All four Appellants were carelessly brandishing the two weapons, even holding a weapon to the victim's head and demanding her car while she was being violated. In addition, Appellants tied R.N. to a chair and beat him after they had carried most of the equipment out of the apartment. We find adequate evidence in this record to support our finding that the public must be protected from this behavior which can only be characterized as abhorrent and extremely dangerous. It is a miracle that either A.B. or R.N. were not killed at some point in this venture with the cruel behavior demonstrated by all four Appellants. In addition, we conclude that the consecutive sentences imposed by the trial court reasonably-relate to each Appellants' relative culpability for the events that happened on the days in question.

Therefore, this issue is without merit.

Appellants Cunningham and Thorne also argue that their rights to due process and a fair trial were violated by the trial court's imposition of consecutive sentencing because it was based upon facts not in charged in the indictment and presented to the jury. However, because we have found the trial court's findings inadequate and have found support for the imposition of consecutive sentences in our own review of the record, we need not address this issue.

## CONCLUSION

For the foregoing reasons, we affirm the convictions and the sentences of all four Appellants.

_____
JERRY L. SMITH, JUDGE